154 So.2d 360

**REX FINANCE COMPANY**

v.

**Martha R. CARY and Walter B. Cary et al**

No. 46465.

June 4, 1963.

Rehearing Denied June 28, 1963.

Clem H. Sehrt, Edw. J. Boyle, Sr., Virgil M. Wheeler, Jr., Edw. J. Boyle, Jr., and Peter J. Butler, New Orleans, for applicants.

George E. Weigel, New Orleans, John E. Fleury, Gretna, Charles J. Rivet, New Orleans, for plaintiff-respondent.

HAMITER, Justice.

The Rex Finance Company, a commercial partnership doing business in the City of New Orleans, caused the issuance herein of executory process to enforce the payment of a collateral promissory note made and subscribed by the defendants, Walter B. Cary and his wife, which was secured by a mortgage on their home located in the Parish of Jefferson. The note had been pledged to plaintiff as security for a personal loan granted by it to one Donald L. Guedry, son-in-law of the Carys.

Shortly after service on them of the usual three days' notice the Carys petitioned for an injunction to prevent the sale of their property, they alleging that Guedry had embezzled and appropriated for his own use their collateral mortgage note and that at no time did they consent to or acquiesce in its negotiation or pledge by their son-in-law. They further averred that plaintiff was a bad faith possessor (and hence not a holder in due course) because its managing partner, Mr. Joseph Bohrer, had actual knowledge of such embezzlement when the pledge was confected.

Following initiation of the injunction proceedings the Rex Finance Company impleaded the United States of America (hereinafter referred to as government) for the purpose of having adjudicated the rank of a government tax lien filed against the Cary property subsequent to the recordation of the collateral mortgage.

After a trial of the merits the district court rendered a judgment decreeing that the pledge of the Cary collateral note was valid and that the mortgage securing such note ranked first with preference and priority over all other claims, privileges or levies, particularly over the government tax lien. The judgment also dismissed the petition of the Carys for a permanent injunction.

The Carys and the United States government appealed to the Fourth Circuit Court of Appeal, and there the judgment of the district court was affirmed (La.App., 145 So. 2d 672). We granted certiorari at the instance of the Carys.

The government did not seek a review by this court on certiorari; in fact, it failed to apply for a rehearing in the Court of Appeal. Consequently, the judgment as to it (decreeing its tax lien to be inferior in

rank to the collateral mortgage held by plaintiff) is final.

Our consideration of the matter, therefore, is limited to the right of the Carys to enjoin plaintiff's proposed foreclosure sale.

Briefly, the circumstances leading up to this litigation, concerning which there is little dispute, are as follows: On August 25, 1958 the Carys executed a negotiable promissory note in the amount of $15,000, payable to bearer on demand, that was secured by a mortgage on certain described property owned by them and in which they lived. The mortgage was accepted on behalf of all future holders by the son-in-law Guedry, with whom Cary operated in partnership a used car business. About September 1, 1958, at Guedry's suggestion, Cary placed the collateral note in a locked drawer at their place of business (to which drawer both Cary and Guedry had free access) for safe keeping. On September 17, 1958, Guedry obtained a loan of $12,000 from plaintiff, he giving his hand note for that amount, payable in one month, and guaranteeing payment of the loan by a pledge of the Cary's collateral mortgage note of $15,000 (it has been in the continuous possession of plaintiff since that time). But Guedry did not pay the hand note when due. Instead, he obtained a renewal thereof, as well as a number of monthly extensions subsequently, by payment of the agreed interest.

The Court of Appeal (also the district court) found as a fact that initially the Carys were unaware of the pledge of the collateral note; that they did not authorize Guedry to use it; and that it came into his possession through either fraud, deceit or embezzlement. (This finding is the one most favorable to the Carys, and we will assume for the purpose of this decision that it is correct.) On the other hand the evidence in the record convinces us (as it did the Court of Appeal and the district court) that when the pledge was originally executed the plaintiff accepted the collateral note (as security for the loan) in good faith and without knowing of Guedry's unauthorized use of it. Besides, the Carys do not now urge that plaintiff had knowledge of the defect when it gained possession on September 17, 1958.

Presently, the Carys maintain that on or about January 20, 1959 the Rex Finance Company (particularly its managing partner, Mr. Bohrer) was apprised of Guedry's misappropriation of their note; that on February 26, 1959, through negotiations of the parties (hereafter discussed), Guedry's original obligation to plaintiff was extinguished by payment; and that on the latter date the Cary's collateral note was again used and pledged by Guedry to secure a new indebtedness to plaintiff. Then they insist that thereby the plaintiff's rights under the original pledge were lost; that when the

new pledge was made the plaintiff, being aware at that time of the defect in Guedry's title and possession, could not be and was not a holder in due course; and that, accordingly, the equities existing between them (the Carys) and Guedry became legally and properly assertible as against the plaintiff.

The transaction of February 26, 1959, as well as the pertinent events preceding it, occurred in the following manner: For several months Guedry, as we have indicated, was able to obtain renewals of his first hand note by paying the stipulated interest. However, sometime in January, 1959 he and the used car partnership business commenced having financial difficulties; and, as a result, he was unable to pay the original obligation of $12,000 when due on February 17, 1959 or the interest required for obtaining a further extension of it. Additionally, on the last mentioned date Guedry owed plaintiff's managing partner (Bohrer) personally some $3,000. Consequently, on February 26, 1959 those two obligations were consolidated in and evidenced by a new hand note executed by Guedry for $15,000 which was payable to plaintiff on March 17, 1959 and contained the notation that it was secured by the Cary collateral mortgage note. The old hand note for $12,000 was then marked "Paid" and given to Guedry. Also, simultaneously, plaintiff issued its check in the amount of $15,000 to Guedry who endorsed and returned it to the former.

When Guedry failed to pay the new or last hand note ($15,000), and demands on the Carys for payment were to no avail, the plaintiff instituted the instant foreclosure proceeding (on April 21, 1959). It, as aforestated, was met by the injunction of the Carys.

In order to succeed in this litigation the Carys must prevail with respect to both of these issues: (1) whether on February 26, 1959 there was an extinguishment of Guedry's original obligation to plaintiff with the result that the latter now holds the collateral mortgage note as security for a new debt arising as of that date, and (2) whether the plaintiff was then aware of Guedry's misappropriation of the note and of his lack of authority to use it.

The Court of Appeal passed upon only the first stated issue and held that there was not an extinguishment of the old obligation. Thereupon, we granted certiorari because of our having entertained some doubt as to the correctness of such holding.

Now that the entire record is before us, and since our conclusion on the second mentioned issue is unfavorable to the Carys (as will be hereinafter shown), we find that it is unnecessary for us to consider the issue discussed and passed upon by the Court of Appeal. (It is well to note that when the case was before the Court of Appeal the United States government was a party liti-

gant and was pressing its claim for a superior tax lien. For this reason it was necessary for such court to pass upon the issue of extinguishment in order to determine the proper rank of the respectively urged encumbrances; and when it decided that no extinguishment occurred there was no need for it to consider the issue of the plaintiff's good faith as of February 26, 1959. But since the rendition of that decision, as we have heretofore shown, the question of rank has passed from the case, the government not having sought a review of the Court of Appeal's judgment against it.)

While the Court of Appeal expressly refrained from resolving the issue of the alleged bad faith of plaintiff during the negotiations leading up to the transaction of February 26, 1959, it appears that the trial judge decided such issue favorably to plaintiff. In his reasons for judgment he said: " * * * Guedry's $12,000 hand note was due on February 17, 1959, and he failed to pay it on that day. After some effort, the Rex Finance Company had Guedry come to their office on February 26, 1959. *The evidence does not show that the Rex Finance Company knew that there was anything wrong with the pledged note,* but obviously it then knew that Guedry was in very poor financial condition and that it must act swiftly in order to insure payment of Guedry's obligation. * * *" (Emphasis ours)

■ Our review of the record discloses a direct conflict in the testimony as to whether or not Cary informed Bohrer in January, 1959 that the collateral note had been stolen and pledged without his authority. Nevertheless, we do not feel justified in reaching a conclusion on such issue of fact different from that of the trial judge who saw and heard the witnesses, particularly since certain revealed circumstances and the conduct of the parties during the crucial period (both before and after the occurrence of the February 26 transaction) are consonant with the judge's findings.

Thus, although Cary testified that he told Bohrer sometime in January, 1959 that the collateral note had been stolen (this was emphatically denied by Bohrer) he took no action thereafter in any manner to obtain possession of it. In fact, he did nothing until after having been informed by Bohrer, through a letter of March 10, 1959, that if the Guedry note was not paid on March 17 proceedings against him on his collateral note would be commenced.

On March 17, following the receipt of such letter, Cary and a friend called on Bohrer to arrange an extension for Guedry and "to see if we could work it out to where he could pay it." At this meeting Cary did not demand or seek a return of his collateral note. Rather, he sought only an extension of the indebtedness; and, in-

cidentally, he succeeded in obtaining it for a period of two weeks.

Again, the record discloses no resentment at any time on the part of the Carys toward Guedry, notwithstanding that the latter admitted in writing his having misappropriated property belonging to the used car partnership and to the Carys that was worth in excess of $115,000, including the above discussed collateral note. On the contrary we find that the Carys called Guedry as a witness in the trial of the instant cause which occurred in March and April, 1960 (more than a year after the alleged embezzlement under consideration), and he testified at length in their behalf.

■ Conceding arguendo that on February 26, 1959 there occurred an extinguishment of the old indebtedness and the creation of a new one it must be concluded that the plaintiff, not having received notice of the defect as aforeshown, was at that time a holder in due course (just as it was originally). And it follows that the equities which allegedly existed between the makers of the collateral mortgage note (the Carys) and the pledgor (Guedry) cannot be urged against this plaintiff to defeat its foreclosure proceedings.

For the reasons assigned the judgment of the Court of Appeal is affirmed.