NORRIS, Judge.
The plaintiff, who was the seller in this case, appeals a lower court judgment which awarded him $1,500 and ordered the defendant, purchaser, to return certain movable property. Appellant seeks an increase in the amount awarded. Appellee only asks for affirmance.
Wiger, the plaintiff, was a businessman who had a carpet and flooring store in Jonesboro. Meyer, the defendant, was a carpet and flooring installer who had known Wiger for about five years, during which time he worked for Wiger on a few occasions. Sometime in 1981, Meyer expressed an interest in getting into the carpet business himself. Wiger said he could help him do so, but that the best way would be for Meyer to buy up somebody’s inventory and store equipment. Wiger was considering retiring from the business because he had lost the lease on his store and said he could probably help Meyer.
Eventually, Meyer agreed to buy the contents of Wiger’s store and to open up his own business. The sale took place on April 14, 1981. There was no written contract or bill of sale but there is a promissory note for $45,000 and an inventory prepared by Wiger without Meyer’s collaboration. The note is payable in monthly installments of $500 each, with “large payments at Larry Meyer’s discretion” to pay off the balance by June 1985. It also states an interest rate of 10%, although the parties agree that only 8% was intended.
The sales business did not go well for Meyer. The store could not pay for itself and Meyer was forced to return to work installing carpet part-time, working for Wiger and other carpet retailers. Meyer’s wife tended the store during these times. By the end of 1981 Meyer was seriously considering declaring bankruptcy. In January 1982, he met with Wiger and informed him of his distress. Wiger was willing to modify the agreement.
The undisputed elements of the modified agreement are that Wiger would take back almost the entire salable inventory and leave Meyer with the store equipment, sample books, and displays.[1] Wiger would credit the wholesale value of the returned goods against Meyer’s debt. In addition, Wiger would grant Meyer six months of interest-free payments. For these six months Meyer agreed to pay $750 instead of $500. They made a new list of inventory, but once again they failed to commit their agreement to writing.
*119 Unfortunately business did not improve for Meyer. He made four payments and then tendered to Wiger the remaining samples and equipment in his possession. Wiger refused and filed this suit to collect the balance owed on the note, $23,076.39. Wiger presented his case as a simple suit on a negotiable instrument. Wiger was a party to the sales transaction and had knowledge of Meyer’s defenses. He is therefore not a holder in due course, under LSA-R.S. 10:3-302(l)(c), and any evidence of Meyer’s personal defenses against him was properly admitted.
At trial, Meyer presented much evidence to show that Wiger had not delivered many of the goods promised, that many of the goods actually delivered were far less valuable than Wiger had represented and that Wiger had generally failed to comply with other promises he made, such as a covenant not to compete with Meyer. The big dispute, however, involved the provisions of the January 1982 agreement. Wiger claimed that he had taken back inventory, suspended interest and increased monthly payments for six months only to help reduce Meyer’s debt. He insisted he had no intention of receding from the sale and that at the end of six months, Meyer would simply have to start paying interest again. Meyer’s version is that he was to run his store for six more months on a specialty-order basis, and if after that time he still could not operate profitably, then Wiger would take back the rest and liquidate the debt.
The trial judge, who was in the best position to evaluate the credibility of the witnesses, believed Meyer’s version of the agreement and we find his factual determination is not manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). There is no reason why Wiger would take back essential items Meyer needed to conduct his business and credit them to the note unless he intended to rescind the agreement. Nor is there any reason why Meyer, on the verge of financial embarrassment, would consent to raise his monthly payments by 50% except to buy an option to rescind in six months should his business still be unprofitable at that time. The trial judge’s findings in this regard are adequately supported by the evidence.
We must disagree, however, with the trial judge’s conclusion that a novation took place in January 1982. Under LSA-C.C. art. 2185, novation is a contract whereby an existing obligation is extinguished and a new one is substituted in its place. LSA-C.C. art. 2190 states that novation cannot be presumed and must clearly result from the terms of the agreement or by full discharge , of the original debt, even though the jurisprudence has inferred novation under proper circumstances, as in Huval Tractor v. Joumet, 413 So.2d 978 (La.App. 3d Cir.1982). Even accepting Meyer’s version and noting all the circumstances we do not think the old obligation was extinguished in January 1982.
The original contract was a sale and, although it included many incidental stipulations in the form of personal obligations by Wiger, it contained the essential elements of thing, price and consent. LSA-C.C. art. 2439. After January 1982, the thing was essentially the same, including the same samples, displays and equipment as before. The consent remained the same as both parties concurred in the intent to sell and buy the things necessary for the running of a carpet store. The price was reduced, but it was still calculated on the basis of the April 1981 note. The payment scheme was changed, but a change in interest rate or amount of installments does not novate the obligation. Rex Finance Co. v. Cary, 145 So.2d 672 (La.App. 4th Cir.1962), aff d on other grounds, 244 La. 675, 154 So.2d 360 (1963). These changes were not enough to produce a novation, as LSA-C.C. art. 2187 says, “If it [the obligation] be only modified in some parts, and any stipulation of the original obligation be suffered to remain, it is no novation.” The same conclusions will also *120 obtain under new LSA-C.C. art. 1881 of the 1984 revision.[2]
The January 1982 agreement was not a novation but a modification of the April 1981 contract. We agree with the trial judge that the parties mutually consented to change the payment and interest scheme, as well as to add the fixed term and resolutory condition. Mutual consent is the only requirement to amend an agreement under LSA-C.C. art. 1901. See also Snedegar v. Noel Estate Inc., 438 So.2d 677 (La.App. 2d Cir.1983), writ denied, 442 So.2d 459 (La.1983). Writing was not required for this amendment, under LSA-C.C. art. 2441, and Meyer has proved the content of the amendment by the surrounding circumstances and the testimony of one credible witness, under LSA-C.C. art. 2277. See also O’Rourke v. Tracy, 375 So.2d 747 (La.App. 4th Cir.1979).
The record shows that Meyer continued to operate his store despite his tender of the remaining goods, even at the time of the trial. We do not interpret these acts as an acknowledgment that he intended to stay in business all along or as proof that the business became profitable. Such a conclusion would go against the weight of the testimony. We rather consider these acts to be Meyer’s attempt to mitigate his losses. When Meyer made the admittedly premature tender of goods to Wiger, it became apparent that Wiger was not going to honor his end of the bargain as modified. Although Meyer was responsible for the initial breach of the modified agreement, we cannot fault him for trying to salvage something from the proposition. In fact, he might have had a duty to do so. See LSA-C.C. art. 1930; Henry Rose Mercantile & Mfg. Co. v. Smith, 139 La. 217, 71 So. 487 (1916).
Under the terms of the amendment, Meyer was to pay a $750 installment each month, interest-free, and if in six months he could not make a profit, both sides would rescind. Meyer’s business did not become profitable within the six-month period and he tendered return of the movables to Wiger. Thus the trial court was not in error in rendering judgment in favor of Wiger for $1,500 and further ordering Meyer to return to Wiger the movable property-
The judgment of the lower court is affirmed at appellant’s cost.
AFFIRMED.

. This arrangement would allow Meyer to show samples to prospective customers and place individual orders for any who wanted to purchase and were willing to wait. Meyer was effectively out of the "cash and carry” business.

. New LSA-C.C. art. 1881 reads:
Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.
Novation takes place also when the parties expressly declare their intention to novate an obligation. Mere modification of an obligation, made without intention to extinguish it, does not effect a novation.
The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.
[Emphasis added.]
Acts 1984, No. 331, § 1, art. 1881.
Revision comment (a) says that the article is based on present art. 2187, does not change the law, and seeks to discourage the finding of novation absent clear intent. We think, however, that this new article will be more permissive of novation, since it would allow novation if "any” part of the obligation remained the same, provided that was not a "substantial” part. This difference would not be of any consequence in this case because in this case a very substantial part remained the same.