533 So.2d 170 (1988)
CONCORDIA BANK & TRUST CO., Plaintiff-Appellee,
v.
Samuel Thomas LOWRY, et al., Defendants-Appellants.
No. 87-369.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1988.
Rehearings Denied December 1, 1988.
*171 Brent S. Gore, Ferriday, for plaintiff-appellee.
Lloyd F. Love, Ferriday, for defendantsappellants.
Before FORET, STOKER and DOUCET, JJ.
FORET, Judge.
This appeal involves a suit by Concordia Bank & Trust Company (Concordia Bank) against Samuel Thomas Lowry a/k/a Tommy Lowry, Cheryl Frazier Lowry, Tim Lowry, Gail Lowry, Tracy Lowry, and Gail Willhite Lowry, on a promissory note, and for recognition and enforcement of two collateral mortgages and collateral mortgage notes which were allegedly pledged to secure the indebtedness sued upon. Answer was filed by Samuel Thomas Lowry a/k/a Tommy Lowry, and Cheryl Frazier Lowry, but no answer was filed by the other defendants, and a default judgment was rendered against them on December 4, 1986. Defendants, Tim Lowry, Gail Lowry and Tracy Lowry have devolutively appealed this judgment. However, Gail Willhite Lowry did not file an appeal, and the judgment of the trial court is therefore final as to her.

FACTS
On August 1, 1984, Tim Lowry, Cheryl Frazier Lowry, Gail Lowry, Tracy Lowry, Samuel Thomas Lowry and Gail Willhite Lowry executed a collateral mortgage note in favor of Concordia Bank in the sum of $100,000. This note was secured by a collateral mortgage for the same amount signed by the aforementioned parties pursuant to which said parties mortgaged to Concordia Bank approximately 35 acres of land located in Section 34, T8N-R9E, Concordia Parish, La. On this same date, the makers of the aforesaid note also executed a collateral pledge agreement, pursuant to which the aforesaid collateral mortgage note was pledged to Concordia Bank to secure the indebtedness of "any one of the undersigned." Finally, on this same date, Samuel Thomas Lowry and Cheryl Frazier Lowry executed a second collateral pledge agreement in favor of Concordia Bank. In this collateral pledge agreement, Samuel and Cheryl Lowry pledged a collateral mortgage note previously executed by said parties on February 15, 1982, to secure any indebtedness owed or to be owed by either of them to Concordia Bank. It should be noted at this point that the property affected by the February 15, 1982 collateral mortgage is not the same tract of land described in the subsequent mortgage of August 1, 1984, referenced above. Thereafter, Samuel Thomas Lowry borrowed $61,859.67 from Concordia Bank, evidenced by one promissory note dated February 1, 1985. He defaulted on this loan and the trial court thereafter rendered judgment against the aforenamed defendants in the sum of $74,453.14, together with accrued interest, attorney's fees, and court costs.
Several issues are presented for our consideration on appeal:
(1) Does the collateral pledge agreement in question secure the indebtedness represented by the February 1, 1985 promissory note signed by Samuel Thomas Lowry?
*172 (2) Can appellants be held personally liable for the indebtedness represented by the February 1, 1985 promissory note although they did not sign the note?
(3) Does a pledge of a collateral mortgage note have to be accepted in writing?
(4) Is the trial court correct in rendering judgment against appellants, recognizing and enforcing a collateral mortgage and collateral mortgage note which was signed only by Samuel Thomas Lowry and Cheryl Frazier Lowry?
DOES THE COLLATERAL PLEDGE AGREEMENT SIGNED BY APPELLANTS ON AUGUST 1, 1984 SECURE THE FEBRUARY 1, 1985 PROMISSORY NOTE EXECUTED BY SAMUEL THOMAS LOWRY?
The trial court rendered judgment in favor of Concordia Bank and against appellants herein, recognizing and enforcing the collateral mortgage and collateral mortgage note executed on August 1, 1984. In so doing, the trial court implicitly found that the August 1, 1984 collateral pledge agreement secured the February 1, 1985 promissory note signed by Samuel Thomas Lowry. Appellants contend that the collateral pledge agreement in question is invalid because it does not identify the debt or debts to be secured thereby. We find this contention to be without statutory or jurisprudential support. The collateral mortgage arrangement can be used to secure a future debt or series of debts, the amounts of which may be undetermined as of the date the collateral mortgage and collateral mortgage note are executed. Texas Bank of Beaumont v. Bozorg, 457 So.2d 667 (La.1984). It is not necessary for the pledge agreement to specifically describe the dates and amounts of the hand notes to be secured; it is sufficient for the pledge instrument to simply state that the collateral mortgage note is being pledged to secure future advances or loans. Mardis v. Hollanger, 426 So.2d 392 (La.App. 2 Cir.1983), writ denied, 430 So.2d 93 (La. 1983). As noted earlier, the collateral pledge agreement provides that it secures the indebtedness of "any one of the undersigned." It further states as follows:
"The property described herein shall be held by BANK as general collateral to secure any and all indebtedness due or to become due by PLEDGOR and/or DEBTOR and it shall be conclusively presumed that any and all loans and advances hereafter made to PLEDGOR and/or DEBTOR by BANK shall have been made in accordance with and upon the COLLATERAL pledged in this Agreement, which shall remain in force and effect so long as PLEDGOR or DEBTOR is indebted unto BANK; and it is expressly understood that the possession by BANK of any property of PLEDGOR of any character whatsoever shall conclusively evidence the fact that such property has been delivered in accordance with this Agreement, whether or not the same may be specifically described as contemplated herein."
Moreover, the February 1, 1985 hand note specifically states that it is secured by the collateral pledge agreement of August 1, 1984. Therefore, we have little difficulty in finding that the collateral pledge agreement in question was intended to secure and did, in fact, secure the hand note executed by Samuel Thomas Lowry on February 1, 1985. We therefore find this specification of error to be without merit.

APPELLANTS' LIABILITY ON THE HAND NOTE SUED UPON
The trial court rendered judgment against appellants in the sum of $74,453.14, together with interest and attorney fees, representing the amount owed in connection with the hand note signed by Samuel Thomas Lowry on February 1, 1985. It is well established that in a collateral mortgage arrangement, the hand note is the debt instrument while the collateral mortgage note is a security device pledged to secure the hand note. First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978). However, while it is established that the hand note is the debt instrument in a collateral mortgage arrangement, it is equally clear that the maker of the collateral mortgage note is personally liable thereon. A *173 collateral mortgage note, such as the one signed by appellants in the instant case, is a negotiable instrument. The mere fact that it is paraphed for identification with a collateral mortgage does not alter its nature or effect. Accordingly, the collateral mortgage note creates a personal obligation for which the maker is liable. It therefore follows that even though the debt is incurred in connection with a hand note in a collateral mortgage arrangement, the maker of the collateral mortgage note is personally liable for the indebtedness owed. However, such personal liability is limited to the lesser of the face amount of the collateral mortgage note and the amount owed in connection with the hand note.[1]
In Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3 Cir.1988), we were faced with a similar issue, i.e., the personal liability of the maker of a collateral mortgage note for an indebtedness created by a hand note signed by a third party. We stated therein the following:
"Lastly, defendants argue that since only Mr. Bailey signed the hand note, Mrs. Bailey should not have been cast in judgment along with her husband. We find no merit in this contention.
On April 10, 1984, both Frank Bailey, Jr. and Mary Louise White Bailey signed the collateral mortgage and the collateral mortgage note waiving division and promising to pay $250,000.00 upon demand. On April 12, 1984, both Frank Bailey, Jr. and Mary Louise White Bailey executed a pledge of this collateral mortgage and the collateral note to secure any indebtedness of Frank Bailey, Jr., to the Bank of Lafayette, up to the sum of $250,000.00. This pledge agreement was accepted by the Bank. Therefore, the collateral mortgage note being pledged for an obligation evidenced by the hand note executed by Frank Bailey, Jr. bound both Mr. and Mrs. Bailey, in solido, for payment of that obligation up to the full amount of the collateral mortgage note. Chaffe v. Whitfield, 40 La.Ann. 631, 4 So. 563 (La.1888); Zibilich v. Rousco [157 La. 936], 103 So. 269 (La.1925)."
See also, Rex Finance Co. v. Cary, 244 La. 675, 154 So.2d 360 (1963) and Baker Bank & Trust Co. v. Behrnes, 217 So.2d 461 (La.App. 1 Cir.1968).
Considering the above and foregoing, we find this assignment of error to be without merit and accordingly, appellants are liable for the full amount owed, to-wit, the sum of $74,453.14[2], together with interest and attorney's fees provided for in the judgment.

ACCEPTANCE OF PLEDGE AGREEMENT BY CONCORDIA BANK
Appellants contend that the pledge of their collateral mortgage note is invalid because Concordia Bank did not evidence its acceptance thereof by signing the collateral pledge agreement. This contention runs counter to established Louisiana jurisprudence. The only formality required for the pledge of a collateral mortgage note is delivery to the pledgee, although such delivery must be coupled with a contemporaneous agreement that the note pledged will stand as security for existing or future debts. Mardis v. Hollanger, supra.
The collateral pledge agreement states that the pledged note was delivered to Concordia Bank, and there is nothing in the *174 record to indicate otherwise. Furthermore, the intent to pledge is clearly evidenced by the collateral pledge agreement which was signed by appellants herein. We therefore find a valid pledge of the collateral mortgage note in question has taken place in this case.
JUDGMENT AGAINST TIM LOWRY, GAIL LOWRY & TRACY LOWRY RECOGNIZING AND ENFORCING THE COLLATERAL MORTGAGE SIGNED BY SAMUEL THOMAS LOWRY & CHERYL FRAZIER LOWRY
Appellants complain that the trial court should not have rendered judgment against appellants recognizing and enforcing a collateral mortgage in the sum of $25,000 signed only by Samuel Thomas Lowry and Cheryl Frazier Lowry. We agree. This collateral mortgage was given as additional security for the February 1, 1985 hand note signed by Samuel Thomas Lowry. This was done pursuant to a second collateral pledge agreement dated August 1, 1984, which is filed in the record in these proceedings. Because appellants did not execute the collateral mortgage, a judgment against appellants, recognizing and enforcing these security devices, should not have been rendered. As appellants did not sign either of these instruments, a judgment directed toward their recognition and enforcement does not involve appellants in any way. Accordingly, the judgment should be amended by deleting any reference to appellants insofar as the recognition and enforcement of the $25,000 collateral mortgage is concerned.
In conclusion, it should be noted that appellants also contend that their collateral mortgage and collateral mortgage note in the sum of $100,000 does not secure the indebtedness sued upon because the hand note in question paid off or cancelled a prior hand note executed by appellants as well as the other defendants named in the lawsuit filed by the bank in these proceedings. However, this is not indicated by the record and therefore we will not discuss this issue on appeal.
In view of the above, the judgment of the trial court is hereby recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the preliminary default entered herein on the 24th day of November, 1986, be now confirmed and made final, and that there be judgment herein in favor of plaintiff, CONCORDIA BANK & TRUST COMPANY, and against defendants, TIM AND GAIL LOWRY AND TRACY and GAIL WILLHITE LOWRY, jointly and in solido, in the full sum of SEVENTY-FOUR THOUSAND FOUR HUNDRED FIFTY-THREE AND 14/100 ($74,453.14) DOLLARS, as of August 12, 1986, together with interest at the rate of 13.5% from date until paid in full; provided, however, beginning December 15, 1986, there will be an interest charge of 18% per annum until paid; together with an attorney's fee of 25% on both the principal and interest due and exigible.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, CONCORDIA BANK & TRUST COMPANY, and against defendants, TIM AND GAIL LOWRY and TRACY AND GAIL WILLHITE LOWRY, recognizing and maintaining plaintiff's mortgage on the following described property, to-wit:
The northeast quarter of the northeast quarter (NE/4 of NE/4) of Sec. 34, T8N-R9E, situated in Concordia Parish, Louisiana, and containing 40 acres, more or less.
LESS AND EXCEPT: a 5.0-acre tract situated in the NE/4 of NE/4 of Sec. 34, T8N-R8E, Concordia Parish, La. and more particularly described as follows: Commence at the corner common to Secs. 26, 27, 34 & 35, T8N-R8E and run south along the east boundary of Sec. 34 a distance of 1059.9 feet to a point, this being the point of beginning; thence west a distance of 837.4 feet to a point; thence south a distance of 260.10 feet to a point on the south boundary of the NE/4 of NE/4, Sec. 34; thence east along said south boundary a distance of 837.4 feet to a point on the east boundary *175 of Sec. 34; thence north along said east boundary a distance of 260.10 feet to the point of beginning and containing 5.0 acres, more or less, together with all buildings and improvements, appurtenances, and attachments, rights, ways, privileges, servitudes, advantages, thereunto belonging or in any wise appertaining, including all immovables by nature or destination, now or hereafter forming part of and attached to or connected with said property or used in connection therewith.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, CONCORDIA BANK & TRUST COMPANY, and against the defendant, GAIL WILLHITE LOWRY, recognizing and maintaining plaintiff's mortgage on the following described property, to-wit:
A portion of the property acquired by D.B. Fleming, et al from Pritchard-Wheeler Lumber Co., Bayou Land and Lumber Co., and G.P. Bullis, by deed dated 1 March 1924 and recorded in Conveyance Book DD, page 442, et seq., of the records of Concordia Parish, Louisiana, the portion of said land herein being conveyed, is described more particularly as:
The point of beginning is located at the intersection of the South side of Virginia Avenue and the West side of Seventh Street of the Town of Ferriday, Louisiana, as shown on a plat of Joseph A. Donohue, dated January 1958, recorded in Conveyance Book P-6, page 73, of the Records of Concordia Parish; from the point of beginning to thence in a westerly direction 100 feet along the south side of Virginia Avenue to a point; go thence in a southerly direction parallel to the west line of Seventh Street, a distance of 140 feet to a point; go thence in an easterly direction parallel to the south line of Virginia Avenue 100 feet to a point on the west line of Seventh Street; go thence in a northerly direction along the west line of Seventh Street 140 feet to the point of beginning; being a lot of ground fronting 100 feet on the south side of Virginia Avenue and running back in a southerly direction 140 feet between parallel lines, the easterly of said lines being the west line of Seventh Street.
Together with all buildings and improvements, appurtenances, and attachments, rights, ways, privileges, servitudes, advantages, thereunto belonging or in any wise appertaining, including all immovables by nature or destination, now or hereafter forming part of and attached to or connected with said property or used in connection therewith.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants, TIM AND GAIL LOWRY, TRACY AND GAIL WILLHITE LOWRY, pay all costs of the trial court proceedings.
Costs of this appeal are assessed to appellants herein.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
FORET, J., also files a concurring opinion.
FORET, Judge, concurring.
Following the sometime practice of my beloved friend, the late Justice Albert Tate, I am filing this addendum to my original review.
I based the result in my opinion on the Bailey case and on Rubins's law review article. Although I was on the panel in Bailey, I was never thoroughly convinced that it is correct. As for Rubin's ruminations in the law review article, he, himself, admits that his views may very well not be free from bias for the reasons which he states therein. I agree.
I have always believed, in my thirty years of law practice and on the bench, that the maker of a collateral mortgage and note which is pledged to a lender to secure the debt of a third party, does not render the maker personally liable to the lender in the event of default by the third party, beyond the value of the property mortgaged.
It seems to me that to hold the maker personally liable would require more than *176 the mortgage and note, and pledge thereof. To hold the maker personally liable over and above the value of the property amounts to personal suretyship, which must be express in no uncertain terms. Nothing is clearer in our law than that suretyship must be express. I doubt that suretyship would be found in this case. However, since judgment went by default, a fortiori, that defense was not raised by appellants, and thus was not considered on appeal. But, my judgment tells me that appellants did not know or intend that they could possibly be held personally liable above and beyond the value of the mortgaged property.
NOTES
[1] For an excellent discussion of this matter, see 40 La.Law Rev. 572, at pages 582, 583, written by Michael H. Rubin. It should be noted at this point, however, that our research does not reveal that the Louisiana Supreme Court has ever passed on the question of whether the maker of a collateral mortgage and note made to secure the debt of a third party becomes himself personally liable, even beyond the value of the property mortgaged.
[2] The suit filed by Concordia Bank prays for judgment against appellants in the sum of $74,453.14, together with interest, attorney's fees and costs. However, the face amount of the hand note is $61,859.67. There is no transcript of the default proceedings and there is no evidence in the record explaining why the judgment is for an amount which is several thousand dollars greater than the face amount of the hand note. Under such circumstances, we can only assume that the trial court was correct in its determination of the amount owed. Thus, the decision of the trial court in this regard will not be disturbed.