679 So.2d 162 (1996)
RUSTON STATE BANK, Plaintiff-Appellee,
v.
Marvin Hank COLVIN, et al., Defendants-Appellants.
No. 28490-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Writ Denied October 25, 1996.
*163 Kenneth W. Campbell, Ruston, for Appellants.
Richard R. Storms, Ruston, for Appellee.
Before SEXTON, WILLIAMS and STEWART, JJ.
STEWART, Judge.
Appellants, Quentin L. Peterson and Pamela C. Peterson, appeal the trial court's judgment declaring the Petersons personally liable through a pledge of their mortgage note, and one-half undivided interest in 24.6 acres of land for the debt of Marvin Hank Colvin. For the following reasons, we affirm the judgment of the trial court.

FACTS
In 1986 Marvin Hank Colvin and his wife, Sherry Garner Colvin (Colvin), applied for a loan from then Ruston State Bank (Bank).[1] On March 31, 1986, Colvin delivered a collateral mortgage note for $20,000.00 to the Bank. ("P-2") It was secured by a mortgage on an undivided one-half interest in 24.6 acres of land in Lincoln Parish, Louisiana, in pledge for a future loan to be made to the Colvins. ("P-3")[2] The Bank was not satisfied *164 with the Colvin's personal guaranty or their undivided one-half interest in the land. As a result, the Bank required that the entire interest in the property be pledged.
Marvin Colvin's sister, Pamela Colvin Peterson, and her husband Quentin L. Peterson owned the remaining undivided one-half interest. The Petersons executed a collateral mortgage note for $20,000.00. ("P-6") The note, dated March 28, 1986, was secured by the collateral mortgage of the land in Lincoln Parish, Louisiana. ("P-7") They then pledged the note to the Bank. ("P-8") Exhibit P-8 pledged the collateral mortgage to secure present and future indebtedness, including interest, attorney fees and cost up to the amount of four million dollars. It also included the following language:
that certain collateral mortgage note dated this date executed by pledgor in the amount of $20,000.00 DOLLARS payable to the order of bearer and secured by a mortgage of even date which mortgage is recorded in Mortgage Book 265, page 196, Instrument No. E-13408, of the mortgage records of Lincoln Parish, Louisiana."
Exhibit P-8.
On June 3, 1986, the Petersons signed and delivered an additional document to Ruston State Bank, exhibit "P-4". The instrument read as follows:
 "Ruston, Louisiana, June 3, 1986
 TO: Ruston State Bank & Trust Co.
 P.O. Box 1130, 400 N. Trenton
 Ruston, LA XXXXX-XXXX
This is to certify that Marvin Hank Colvin and Sherry Garner Colvin (hereinafter called the "borrower") is hereby authorized to hypothecate and pledge under the terms of your loan agreement and/or collateral note form or otherwise, for the borrower's own account or otherwise, as security for any loans or advances at any time made by your institution to the borrower and for any present or future indebtedness or other obligation of the borrower to you and for any renewal or extension of any or all thereof, the following securities which are my personal property:
$20,000.00 Ruston, Louisiana March 31, 1986
On demand after date, for value received, we the signers, endorsers, guarantors, and sureties and each of us in solido, promise to pay to the order of BEARER, Twenty thousand and No/100 ___ Dollars, with interest at the rate of 12% percent per annum thereon from date until paid and all attorney fees incurred in the collection of this note, or any portion thereof, including interest, which fees are hereby fixed at 25% percent of the amount to be collected. (All of their undivided ½ interest in and to: 24.6 acres in the E ½ of NE1/four, beginning at the SW corner of the NE1/four of Section 22, T19N, R2W, right-of-way of Louisiana Highway No. 33.
You are hereby expressly authorized to accept and act upon any or all instructions given you by the borrower regarding any sale or other disposition of any or all of the said securities (referring to the undivided ½ interest in and 24.6 acres), or any additions thereto or substitutions therefor, or proceeds thereof, or any other collateral or security available to you, including the delivery or payment of the same or any part thereof to the borrower or upon his order.
The aforesaid authority to pledge my said property is full and complete, and the terms, provisions, stipulations and conditions of any agreement of pledge thereof that the borrower may execute and deliver to you to secure any indebtedness or liability or direct or contingent, now existing or hereafter arising are hereby authorized, confirmed and ratified.
The authorizations hereinbefore contained shall remain in full force and effect *165 until any loans or advances made by your institution to the borrower are paid in full and thereafter until receipt by you of written notice of the revocation hereof, and, in consideration of any reliance by you on any of the said authorizations, I hereby agree, for myself, my heirs, executors, legal representatives and assigns, to hold you harmless in your reliance hereon prior to your receipt of such notice, whether or not this authority may theretofore have been terminated by operation of law or otherwise. Any action permitted hereby may be taken without notice to me.
WITNESSES:
S/ Brenda David
 S/ Pamela Colvin Peterson
 PAMELA COLVIN PETERSON
S/ Johnny Simmons
 S/ Quentin L. Peterson
 QUENTIN L. PETERSON
SWORN TO AND SUBSCRIBED BEFORE
ME, NOTARY PUBLIC IN AND
FOR THE PARISH OF LINCOLN,
STATE OF LOUISIANA, THIS 3RD day
of June, 1986.
S/ M.L. Van Hooser
M.L. VAN HOOSER
COMMISSION FOR LIFE"
Exhibit P-4.
On June 18, 1993, Colvin obtained a loan from the Bank for $28,855.60. Colvin failed to make payments on his note, and the Bank filed suit against all defendants: Marvin Hank Colvin, Sherry Garner Colvin, Pamela Colvin Peterson and Quentin L. Peterson.
A judgment was rendered, June 13, 1994, against Marvin Hank Colvin and Sherry Garner Colvin. The judgment was signed on June 28, 1994. On July 10, 1995, the trial proceeded against Pamela Colvin Peterson and Quentin L. Peterson. The written opinion, dated August 28, 1995, found the Petersons' liable, in solido, to Ruston State Bank in the full sum of $20,000.00. Interest was due from June 18, 1993, until paid, along with attorney fees of 25% on both the principal and interest due. The trial court maintained and recognized the Bank's mortgage on the undivided one-half interest in the 24.6 acres of land. A judgment in accordance with the written opinion was signed and filed on September 1, 1995. The Petersons appealed the trial court's judgment.

DISCUSSION
The issue presented for review is whether the trial court erred in determining exhibit P-4 was sufficient cause to hold the appellants liable, both personally and through a pledge of their collateral mortgage, for the debt represented by the hand note, dated June 18, 1993, of Marvin Hank Colvin.
As this court stated in Commercial National Bank in Shreveport v. Succession of Rogers, 628 So.2d 33 (La.App.2d Cir.1993), the issue of personal liability for the maker of a collateral mortgage and note pledged to secure the debt of a third party is far from settled under our jurisprudential law. The Louisiana Supreme Court has never squarely addressed this issue. For our consideration, we have at least three Third Circuit cases and one federal district court case that have addressed this issue. See Pontchartrain State Bank v. Lybrand, 799 F.Supp. 633 (E.D.La.1992); Merchants and Farmers Bank & Trust v. Smith, 559 So.2d 845 (La. App. 3d Cir.1990); Concordia Bank & Trust v. Lowry, 533 So.2d 170 (La.App. 3d Cir. 1988); Bank of Lafayette v. Bailey, 531 So.2d 294, (La.App. 3d Cir.1988). The Third Circuit found personal liability attached even though the maker of the collateral mortgage and note did not execute the hand note. The federal district court disagreed with the Third Circuit and found no personal liability beyond the mortgaged property. However, this situation is clearly distinguishable from Commercial National Bank in Shreveport, supra, as well as, the cases cited above. We therefore, begin this analysis with a brief overview of the collateral mortgage.
The collateral mortgage is a form of a conventional mortgage developed by Louisiana jurisprudence. The collateral mortgage does not directly secure an existing debt, but is designed to create a mortgage note for a fictitious debt that can be pledged as collateral security for a real debt. The hand note is the debt instrument while the collateral mortgage note is a security device pledged to secure the hand note. First Guaranty Bank *166 v. Alford, 366 So.2d 1299 (La.1978). Because the mortgagor, after executing the collateral mortgage and collateral mortgage note, pledges the collateral mortgage note as security for a debt, usually represented by a separate hand note, the collateral mortgage scheme combines the security devices of pledge and mortgage. Texas Bank of Beaumont v. Bozorg, 457 So.2d 667 (La.1984).
The collateral mortgage consists of an act of a mortgage, a collateral mortgage note (the "ne varietur" note), and a pledge of the ne varietur note to secure an indebtedness, pursuant to a collateral pledge agreement to secure one or more hand notes. See Max Nathan Jr. & Anthony P. Dunbar, The Collateral Mortgage: Logic and Experience, 49 La.L.Rev. 39 n. 3 (1988). However, as the Third Circuit provided in Concordia Bank & Trust Co. v. Lowry, 533 So.2d 170 (La.App. 3 Cir.1988), the collateral mortgage note creates a personal obligation for which the maker is liable. It therefore follows, that even though the debt is incurred in connection with a hand note in a collateral mortgage arrangement, the maker of the collateral mortgage note is personally liable for the indebtedness owed. This personal liability is limited to the lesser of the face amount of the collateral mortgage note, and the amount owed in connection with the hand note. Concordia, supra at 173.
This court in Commercial National Bank in Shreveport, supra, determined under the facts of that case, no personal liability on the makers of the collateral mortgage note who did not execute the hand note. Liability was limited to the value of the mortgaged property. Nonetheless, in this situation, the appellants signed the collateral mortgage note, a pledge of that note, dated March 28, 1986, a collateral mortgage dated April 2, 1986, as well as exhibit P-4, the hypothecation or pledge of the documents listed above.
In the instant case, the language recited in exhibit P-4, dated June 3, 1986, caused the Petersons to be liable for the Colvin debt then due or which might become due in the future. Exhibit P-4 references a promissory note and an act of collateral mortgage passed before a notary and dated the 31st day of March 1986, in the sum of $20,000.00 secured by the Petersons' undivided one-half interest in and to a 24.6 acre tract of land.
The trial court determined that specific paragraphs in P-4 established that the Petersons were authorizing the Bank to accept and act upon any and all directions given to the Bank by Colvin which included, but was not limited to, the authority to pledge the Petersons' property for the Colvin debt. Exhibit P-4 contained specific language which did not limit their liability. In particular, the trial court noted the language:
You are hereby expressly authorized to accept and act upon any or all instructions given you by the borrower regarding any sale or other disposition of any or all of the said securities (referring to the undivided ½ interest in and 24.6 acres), or any additions thereto or substitutions therefor, or proceeds thereof, or any other collateral or security available to you, including the delivery or payment of the same or any part thereof to the borrower or upon his order.
The aforesaid authority to pledge my said property is full and complete, and the terms, provisions, stipulations and conditions of any agreement of pledge thereof that the borrower may execute and deliver to you to secure any indebtedness or liability or direct or contingent, now existing or hereafter arising are hereby authorized, confirmed and ratified.
The authorizations hereinbefore contained shall remain in full force and effect until any loans or advances made by your institution to the borrower are paid in full and thereafter until receipt by you of written notice of the revocation hereof, and, in consideration of any reliance by you on any of the said authorizations, I hereby agree, for myself, my heirs, executors, legal representatives and assigns, to hold you harmless in your reliance hereon prior to your receipt of such notice, whether or not this authority may theretofore have been terminated by operation of law or otherwise. Any action permitted hereby may be taken without notice to me.
Exhibit P-4.
The preceding paragraphs demonstrate an express authority given by the Petersons to *167 Colvin to pledge the note and mortgage for any indebtedness he occurred. The collateral mortgage note, the act of mortgage, and P-4 pledged to the Bank, confirm the Petersons intentions to be solidarily liable for the hand note dated June 18, 1993, up to the amount of $20,000.00. Their liability is not limited to the undivided one-half interest in the Lincoln Parish land.
The trial court did not abuse its discretion in determining that the language in exhibit P-4 represented a clear intention to be solidarily bound for Colvin's debt for the hand note dated June 18, 1993, up to the amount of $20,000.00, and recognizing the Bank's mortgage in the undivided one-half interest of the 24.6 acres.
Appellants' remaining assignments of error are without merit, and will not be addressed by this court.

DECREE
For the foregoing reasons, we conclude the trial court did not abuse its discretion by finding the appellants personally liable, in solido, for the debt of Marvin Hank Colvin, nor recognizing and maintaining Ruston State Bank's mortgage on the 24.6 acres. The judgment appealed is affirmed at appellants' cost.
AFFIRMED.
SEXTON, J., concurs with reasons.
SEXTON, Judge, concurring:
I don't see any significant difference between these facts and those in Commercial National Bank v. Succession of Rogers, 628 So.2d 33 (La.App.2d Cir.1993), in which I dissented. I agree with this result.
NOTES
[1] The Ruston State Bank & Trust Company was bought out by Premier Bank and became successor in title to Ruston State Bank & Trust Company by virtue of a merger dated June 24, 1994, which was filed for record in Conveyance Book 885 at Page 181, of the records of Lincoln Parish, Louisiana.
[2] Beginning at the SW corner of the E ½ of the NE ¼ of Section 22, T19N, R2W, and run 2, 698 feet to a point. Thence run E 410 feet to a point; thence run S 2,569 feet to a point on the North right-of-way of Louisiana Highway No. 33; thence run in a Southwesterly direction 288.15 feet to a point on the North Right-of-way of Louisiana Highway No. 33; thence run West a distance of 147 feet back to the point of beginning containing 24.6 acres, more or less, LESS AND EXCEPT 2 acres described as follows:

Begin at the SE corner of the NE 1/4 of Section 22, T19N, R2W, Lincoln Parish, Louisiana, thence run North 400 feet; thence run East 205 feet; thence run South approximately 375 feet to the right-of-way of Louisiana Highway No. 33; thence run S 62 degrees 57' 14" along the right-of-way of Louisiana Highway No. 33 for a distance of approximately 50 feet, thence run West 147 feet to the point of beginning, containing 2.0 acres, more or less.