365 So.2d 263 (1978)
CENTRAL PROGRESSIVE BANK, Plaintiff-Appellant,
v.
Billy M. DOERNER et al., Defendant-Appellee.
No. 12209.
Court of Appeal of Louisiana, First Circuit.
October 10, 1978.
Ronald A. Curet, Hammond, for Central Progressive Bankplaintiff-appellant.
William A. Lepore, Hammond, for Billy Doernerdefendant-appellee.
Robert J. Burns, Metairie, for Cumberland Capital Corp.intervenor.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
This is an executory process suit by the first mortgagee, Central Progressive Bank (Central), against property also encumbered by a second mortgage. The second mortgagee, Cumberland Capital Corporation (Cumberland), intervened.
From a judgment entitling Central to be paid by preference out of the proceeds of the sheriff's sale, and ordering the remaining proceeds to be paid to Cumberland, Central has appealed and Cumberland has answered the appeal.
*264 Central held a collateral mortgage on property of the defendants, Billy and Vickie Doerner, located in Tangipahoa Parish. The collateral mortgage note of $10,500.00 plus 10% per annum interest and 25% attorney fees was pledged as security for the hand note of $17,472.00 plus 12% per annum interest and 25% attorney fees. Defendants defaulted on their payments, and the plaintiff instituted this executory proceeding for the balance of $12,925.89 due, together with interest at the rate of 8% per annum from June 2, 1977 and 25% attorney fees on both principal and interest.
The sheriff's sale of the property occurred on December 7, 1977. The property sold for $18,600.00.
On December 9, 1977, Cumberland intervened asserting a privilege, as second mortgagee to the excess of the funds above the amount secured by the first mortgage. On that same day the trial court issued a temporary restraining order for 10 days halting the disbursement of the proceeds. No extensions of the restraining order appear in the record.
The trial court judgment rendered on March 8, 1978, recognized Central "as entitled to be paid by preference out of the proceeds of the Sheriff's Sale heretofore held in this matter the sum of $10,213.85 in principal plus eight per cent (8%) interest per anum [sic] thereon from September 1, 1977, together with twenty-five per cent (25%) additional on both principal and interest as attorneys fees and all costs." It further ordered "that the remaining proceeds from said Sheriff's Sale be paid to intervenor and second mortgage creditor, Cumberland Capitol [sic] Corporation."
In appealing Central contends the trial judge erred in his computation of the amount due Central as the first mortgagee, and in ordering the sheriff on March 8, 1978, to disburse funds which he had been ordered to hold only until December 19, 1977. In answering the appeal, Cumberland also complains of the award in favor of Central.
As pointed out by the record, the original restraining order, dated December 9, 1977, was erroneously[1] altered by the trial judge from "until further orders of this court" to "for a period of 10 days from date hereof," and was not renewed at the expiration thereof. Once the restraining order lapsed, the sheriff completed the proces verbal. The proces verbal recites that the creditor paid the costs and retained the remainder of the bid. Costs amounted to $1,103.50, leaving a balance of $17,496.50 retained by Central.
This court recognizes the problem of the sheriff being ordered to disburse funds which he did not have, and the possible mootness of this proceeding as of the time the trial court rendered its decision.
Cumberland could by separate suit proceed directly against Central for a proper determination of the amount each should receive from the sheriff's sale. Tri-South Mortgage Investors v. Forest and Waterway *265 Corporation, 354 So.2d 588 (La.App. 4th Cir. 1977). Since both the seizing creditor and the intervenor are properly before this court, and acting under the authority of La.C.C.P. art. 2164, and for the sake of judicial economy, we now proceed to a complete resolution of this proceeding.

PLAINTIFF'S CLAIM
In filing this executory proceeding, Central claims a balance due on the hand note of $12,925.89, together with interest at the rate of 8% per annum from June 2, 1977, and attorney fees of 25% on both principal and interest. The hand note was what is generally referred to in the financial trade as a "discount note," and in computing the balance due, Central properly allowed a rebate for the unearned portion of precomputed interest.
The trial judge in computing the balance due fell into error when he ordered plaintiff to compute the indebtedness as if the hand note was a simple interest loan. As this court said in Cameron Brown South, Inc. v. East Glen Oaks, 341 So.2d 450, 456 (La.App. 1st Cir. 1976), "the collateral mortgage note does not represent the indebtedness; it is the security that is pledged to secure another note, usually a hand note, which represents the indebtedness. The true indebtedness is the debt that the collateral mortgage note is pledged to secure." We find no dispute in the record that the computation of the rebate of unearned interest allowed by Central, or the balance due on the hand note was in error. Thus, the balance due Central on the hand note is that as prayed for, or a total balance including principal, interest, and attorney fees of $16,821.58.[2]
The total amount secured by the collateral note is the principal of $10,500.00, interest at 10% per annum from date of default, June 2, 1977, and attorney's fees of 25% on principal and interest, or a total of $13,674.50.[3]
In a suit on collateral mortgage, the seizing creditor can recover a sum no greater than that represented by the collateral note. Therefore, the total indebtedness of the hand note secured by the collateral mortgage is limited to the amount of $13,674.50. See Nathan and Marshall, The Collateral Mortgage: A Reassessment and Postscript, 36 La.L.R. 973 (1976).

INTERVENOR'S CLAIM
Cumberland claims it is the holder of a promissory note for $9,300.00, executed by the defendants on October 1, 1976, and payable in 60 consecutive monthly installments of $155.00 each, with the first installment due on November 15, 1976, plus 25% attorney fees on the unpaid balance. It contends that as of July 27, 1977, the balance remaining after crediting unearned interest and insurance is $6,792.11. We recognize intervenor's claim of $6,792.11 plus 25% attorney fees.
The property sold at the sheriff's sale for $18,600.00, less cost of $1,103.50, or a net balance of $17,496.50 to satisfy the claims of Central and Cumberland. Central's claim of $13,674.50 has priority as a first mortgage, thus leaving a balance of $3,822.00 to be applied toward intervenor's claim.
After calculating and awarding the amount of Central's claim, the trial judge ordered the remainder of the funds to be turned over to Cumberland. The sheriff never had these funds in his possession. These funds are in the possession of Central, the seizing creditor. Cumberland has a valid claim to these funds in the hands of Central. We recognize same, and grant a judgment in favor of Cumberland against Central.
Central was aware when it retained the funds that Cumberland had a claim pending against those funds. Under La. *266 C.C. art. 2301, plaintiff, as trustee of the funds, owes to Cumberland the amount remaining.
Our brethren on the Fourth Circuit dealt with the disbursement of funds from a sheriff's sale in Tri-South Mortgage Investors v. Forest and Waterway Corporation, supra. In that case, the seizing creditor retained the cash purchase price and was held to be "the trustee of the funds with a distinct codal obligation to restore those fundsin this case, under the condition that a judicial determination occurs, ranking the lien claims as superior to Tri-South's mortgage."
Although the case is distinguishable on the facts, the intervenors in Tri-South, supra, were superior ranking lienors whereas in our case the intervenor was the second mortgagee subject to the seizing creditor, the fact still remains that a judicial determination has not been rendered as to the distribution of the proceeds.
Therefore, for the above and foregoing reasons the judgment of the trial court is amended and IT IS ORDERED, ADJUDGED AND DECREED that Central Progressive Bank be recognized as entitled to be paid by preference out of the proceeds of the sheriff's sale heretofore held in this matter the sum of $13,674.50; and IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of intervenor and second mortgage creditor, Cumberland Capital Corporation, against Central Progressive Bank in the amount of $3,822.00, and as amended the judgment of the trial court is affirmed. All costs of this proceeding excluding those costs attributable directly to the sheriff's sale are to be shared equally by Central Progressive Bank and Cumberland Capital Corporation.
AMENDED AND AFFIRMED.
NOTES
[1] La.C.C.P. art. 1092 provides:

"A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant him injunctive relief to prevent such sale before an adjudication of his claim of ownership.
"If the third person claims a mortgage or privilege on the entire property seized, whether superior or inferior to that of the seizing creditor, the intervention may be filed at any time prior to the distribution by the sheriff of the proceeds of the sale of the seized property, and the court shall order the sheriff to hold such proceeds subject to its further orders. When the intervener claims such a mortgage or privilege only on part of the property seized, and the intervention is filed prior to the judicial sale, the court may order the separate sale of the property on which the intervener claims a mortgage or privilege; or if a separate sale thereof is not feasible or necessary, or the intervener has no right thereto, the court may order the separate appraisement of the entire property seized and of the part thereof on which the intervener claims a mortgage or privilege. "An intervener claiming the proceeds of a judicial sale does not thereby admit judicially the validity, nor is he estopped from asserting the invalidity, of the claim of the seizing creditor. As amended Acts 1962, No. 92, § 1."
[2] Principal of $12,925.89; interest at 8% per annum from June 2, 1977 of $531.37; and attorney fees of 25% on principal and interest of $3,364.32.
[3] Principal of $10,500.00; interest at 10% per annum from June 2, 1977 of $539.60; and attorney fees of $2,634.90.