559 So.2d 845 (1990)
MERCHANTS & FARMERS BANK & TRUST, Plaintiff-Appellee,
v.
Guy Roger SMITH, et al., Defendants-Appellants.
No. 88-1212.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1990.
Writ Denied April 27, 1990.
*846 Edwin Cabra, Leesville, for plaintiff-appellee.
Larry W. Rivers, Alexandria, for Rivers. Wm. Yarno, Alexandria, for Smith.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
The question presented by this appeal is whether this defendant, who cosigned a promissory note and executed a collateral mortgage on his immovable property as security, and simultaneously endorsed a handnote for the security of which the collateral note was pledged, became liable personally on the underlying obligation, or liable only to the extent of the mortgaged property. The trial judge held that despite the defense that the defendant did not intend personal liability, he was personally liable, and judgment was rendered against him in a suit by the holder of the collateral mortgage note. We affirm.
The appeal presents two issues, one legal and one factual. The legal issue is whether one who executes a collateral note and mortgage on his property to secure the debt of another becomes personally liable, or liable only to the extent of the property mortgaged. The factual issue is whether in this particular case it was the intent of the parties that the defendant's liability be restricted to the mortgaged property.
The facts are simple. On April 12, 1983, the defendant, Rivers, an attorney, wanting to help a friend, Smith, cosigned with Smith a collateral promissory note to any holder for $15,000. Rivers also cosigned a collateral mortgage on property belonging to him in Vernon Parish to secure future advances. Money was advanced to Smith on the same day that the collateral note and mortgage were signed, the advance being represented by a handnote, signed by Smith and endorsed by Rivers, for $13,500. On the face of the handnote it was shown that the collateral note was pledged as security. This was done pursuant to language in the collateral mortgage which specifically authorized either mortgagor to pledge the ne varietur note as security for advances.
The maker of the handnote, Smith, who borrowed the money, did not repay it, and the bank called on Rivers. Hence this suit. The bank sued Rivers on the collateral mortgage note for the indebtedness due under the handnote, and asked for recognition of its mortgage on the immovable property. Rivers denied liability beyond the value of the property.

LEGAL ISSUE
Is the maker of a collateral mortgage note, pledged to secure a handnote issued pursuant to the authority of the *847 collateral mortgage agreement, personally liable on the pledged note for the obligation created by the handnote? Or is his liability limited to the mortgaged property?
This circuit on two occasions has held that the maker of a collateral mortgage note is personally liable for the indebtedness sued upon, up to the full amount of the collateral mortgage note. Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3rd Cir.1988), writ granted in part, 533 So.2d 5 (La.1988); Concordia Bank & Trust Co. v. Lowry, 533 So.2d 170 (La.App. 3rd Cir.1988), writ granted in part, reversed in part, 539 So.2d 46 (La.1989). Believing that our previous decisions on the subject were correct, we hold that there is personal liability.

FACTUAL ISSUE
Rivers admitted at the trial that he signed the ne varietur collateral note and the collateral mortgage as a maker, and that he endorsed the handnote in the same transaction, but he testified that it was neither his intention nor the bank's that he was to be personally liable. He testified that the intention of all parties (the notes were never negotiated) was that his liability would be limited to the property mortgaged. We recognize that such an agreement, if proved, would be the contract between the parties.
This testimony was not rebutted by other testimony at the trial. Although a bank vice-president appeared as a witness in order to identify the collateral mortgage package when the instruments were introduced in evidence, this officer had no personal knowledge of the transaction. The bank officer who did have personal knowledge of the transaction was not called to testify. Nor was the other party in the transaction, Smith.
The trial court held that the bank had proved its case, and that Rivers was personally liable on the collateral mortgage note. We are asked to find error.
In this case Rivers signed documents that said what they said. The documents were received in evidence as part of the plaintiff's case. At the trial Rivers testified that the parties' intent was different from that stated in the documents. It is true that evidence of witnesses which stands uncontradicted must be accepted as true. Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). In this case Rivers' testimony was not contradicted by other testimony. His testimony was contradicted, however, by other evidence, or proof, consisting of the documents which he signed, and which stated the intent of the parties, and which he admitted signing. In the documents Rivers said his intent was one thing; in his sworn testimony at the trial he said the intent in signing the document was another thing. Thus, the trial judge had before him two kinds of proof in the case, each proof tending to establish different facts. It was the function of the trial judge to make a determination of facts from the conflicting proofs. The trial judge did so, and we are bound to review his decision by the standard of manifest error. We find no manifest error.
The judgment of the trial court is affirmed, at appellant's costs.
AFFIRMED.
FORET, J., dissents and assigns reasons.
FORET, Judge, dissenting.
In 1983, Guy Smith[1] and Larry Rivers were partners in the practice of law in Alexandria. In May of 1983, Smith decided to leave the law firm and establish a law practice in the Leesville area. Smith asked Rivers to assist him in getting a loan to open his practice by offering as collateral a small tract of land owned by Rivers in Vernon Parish. Rivers agreed, and the loan was approved by plaintiff. Accordingly, on May 12, 1983, Rivers and Smith executed a collateral mortgage and note, mortgaging the aforementioned property owned by Rivers. Additionally, on the *848 same date, Smith, as maker, signed a hand note for $13,500. Rivers' signature also appears on the reverse side of the hand note. Subsequent thereto, Smith defaulted on the hand note and this litigation ensued.
The trial court rendered judgment in favor of plaintiff and against Rivers for the full amount owed on the hand note. In his appeal, Rivers contends that the trial court erred in holding him personally liable for the indebtedness sued upon. I agree.
At trial, Rivers testified at length with regard to discussions he had with a Mr. Peace, the bank officer who handled this loan. According to Rivers, it was at all times agreed and understood that Rivers was only offering collateral for this loan and was not to be held personally liable on the indebtedness. Thus, he contends that the parties agreed that Rivers would only be liable to plaintiff to the extent of the property mortgaged. Rivers further stated that it was his understanding that he was signing the reverse side of the hand note only to acknowledge the collateral mortgage and collateral mortgage note as security for the hand note. However, the record indicates that no such language was ever written on the reverse side of the hand note and nothing else appears on the reverse side of this note except Rivers' signature.[2]
Rivers' testimony as to the parties' intentions was in no way rebutted by plaintiff. To begin with, the loan officer who handled the transaction in question did not testify at trial. He had retired from the Bank, but was still living in town and readily available. One wonders whether the Bank knew that his testimony might be detrimental to its interests. Shouldn't that presumption be considered? Plaintiff's only witness was Ken Hughes, its Senior Vice President, who testified that he had no knowledge of the discussions which took place in reference to this transaction. Considering this, I find that the trial court erred in finding that Rivers was personally liable for the indebtedness sued upon.
Where parties to a contract imprecisely or incorrectly state what was mutually agreed upon, equity requires that one claiming error be given the opportunity to prove, by extrinsic evidence, the actual agreement of the parties. Schroeter v. Holden, 499 So.2d 309 (La.App. 1 Cir.1986). This rule of law has been applied to cases involving negotiable instruments as well. In Jaccuzzo v. Fabregas, 12 So.2d 16 (La. App. 1 Cir.1943), the court held that, as between the original parties to a note, if error or mistake is alleged, parol evidence is admissible to show the true intention of the parties. See also A & M Consultants, Inc. of LA. v. Coco, 479 So.2d 543 (La.App. 1 Cir.1985), writ denied, 481 So.2d 632 (La. 1986).
In the instant case, Rivers established by parol evidence the parties' agreement that he would not be personally liable for the indebtedness created by the hand note. He stated unequivocably that it was the parties' intention to create an in rem obligation insofar as he (Rivers) was concerned. This being established, we should give effect to the parties' true intention and hold that Rivers cannot be held personally liable on the indebtedness sued upon. His liability, as per the agreement of the parties, should go no further than the value of the property mortgaged.
The majority relies on boiler-plate language found in all standard notes and mortgages to find that Larry Rivers lied in his testimony as to the agreed upon liability. If personal liability was intended, the Bank could have simply required that Rivers sign the hand note as a co-maker along with Smith; or that Rivers sign a continuing guaranty or any other of an infinite number of security devices, the number of which is limited only by the ingenuity of the Bank employees and/or attorneys.
I, again, feel compelled to address the issue of whether or not the maker of a collateral mortgage note is personally liable for the indebtedness created by the hand note up to the full amount of the *849 collateral mortgage note. In Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3 Cir.1988), writ granted in part, 533 So.2d 5 (La.1988), we held that the maker of a collateral mortgage note is personally liable for the indebtedness sued upon up to the full amount of the collateral mortgage note. Thereafter, our Supreme Court granted the defendants' writ application, in part, and, in so doing, stated the following:
"Granted in part. The personal liability of Mary Louise White is limited to the mortgaged property and the community property; as the bank's printed collateral mortgage form states, it `does not create any liability with regard to the separate property of spouse intervenor.' Any deficiency judgment should be so limited."
See Bank of Lafayette v. Bailey, 533 So.2d 5 (La.1988).
Thereafter, in Concordia Bank & Trust Co. v. Lowry, 533 So.2d 170 (La.App. 3 Cir.1988), writ granted in part, reversed in part, 539 So.2d 46 (La.1989), we followed our holding in Bailey and again held that the maker of a collateral mortgage note is personally liable thereon. Once again, our Supreme Court granted the defendants' writ application, in part, with Justice Calogero stating the following in his concurring opinion:
"I concur in this Court's decision to grant the writ solely for the purpose of clarifying the interest award in the judgment and remanding the case to the trial court for review of the attorney's fee award, and to otherwise deny the writ. As noted in the concurring reasons assigned to the court of appeal's opinion by Judge Foret, there is a pre-legal question, not previously resolved by this Court, as to whether the maker of a collateral mortgage note may be held personally liable, as opposed to liable solely to the extent of the value of the mortgaged property, as a result of a third party's default on the hand note. See M. Rubin, Work of Appellate Courts 1978-1979, Security Devices, 40 La.L. Rev. 572, 582-83 (1980). In their writ application, however, relators did not assign error to the court of appeal's finding that they were personally liable for the amount of the hand note. Instead, relators contested only the amount of the judgment, as calculated by the courts below. They did not ask this Court to grant a writ for the purpose of overturning the finding of personal liability. For that reason we have no cause to examine that aspect of the court of appeal's ruling and our denial in part of this writ, which in any event would not have precedential authority, does not in any way suggest how the personal liability issue should be resolved. If we were presented with an application raising this issue, I would be inclined to favor granting such a writ so that this Court could consider and decide the issue."
Thus, the issue of whether or not the execution of a collateral mortgage and note creates personal liability for the maker is by no means settled. Our Supreme Court has yet to decide this issue. We would hope that, in the near future, the Supreme Court will have the opportunity to resolve this issue in order to finally lay to rest the uncertainty which exists with regard thereto. (See this author's concurring comment in the Concordia Bank case, at pages 175, et seq.)
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The proceedings against defendant, Guy R. Smith, were stayed prior to judgment by order of the United States Bankruptcy Court.
[2] The reverse side of the hand note is not in evidence. However, Rivers acknowledged at trial that he did sign the reverse side of this note and the trial court stated, in its reason for judgment, that nothing else appears thereon.