**PONTCHARTRAIN STATE BANK,**
formerly known as Louisiana
Commercial Bank

v.

**Eloyease Watkins LYBRAND, Ronald
Lybrand, Jeanne Sutton Davis,
and William C. Davis, Jr.**

Civ. A. No. 91–3076.

United States District Court,
E.D. Louisiana.

July 16, 1992.

Paul John Mirabile, Mariann Crapanzano, Middleberg, Riddle & Gianna, New Orleans, La., for plaintiff.

Warren Joseph Pickle, Nelkin & Pickle, Metairie, La., for defendants.

## OPINION AND REASONS

McNAMARA, District Judge.

This matter was submitted for trial on the documents. It presents a single question of law: Is the maker of a collateral mortgage and collateral mortgage note personally liable when the collateral mortgage note is pledged as security on behalf of a third party?

### Background

The collateral mortgage is a security device peculiar to Louisiana. It operates, more or less, as an open line of credit secured by a mortgage.[1] One of its virtues lies in its capacity for the ranking of liabilities from the date of the original pledge of the collateral mortgage note, rather than from the date of the individual, subsequent cash advances. It has been called "a source of unfortunate confusion and bizarre litigation"[2] and the product of "the strange alchemy of the pledge of a mortgage created by the pledgor."[3] But it has also been called "one of the most desirable and powerful security interests."[4]

Its mechanics may well puzzle those from outside the state's boundaries. First, a collateral mortgage is executed in favor of future holders of the "mortgage note," such holders being represented by a nominal mortgagee. It is not uncommon for the nominal mortgagee to be one of the secretaries in the office of the drafting lawyer. Generally at the same time, a promissory

---

1. "There are two significant characteristics of the collateral mortgage that make it a unique security device, in fact these characteristics are the very essence of its existence:
   First, the collateral mortgage note can be issued and reissued and returned to the maker without extinguishing the collateral mortgage.
   Second, the collateral mortgage is both a mortgage and a pledge."
   *Cameron Brown South, Inc. v. East Glen Oaks, Inc.,* 341 So.2d 450, 455 (La.App. 1st Cir.1976).

2. Nathan & Marshall, "The Collateral Mortgage," 33 *La.L.Rev.* 497, 498 (1973).

3. Sachse, "Report to the Louisiana Law Institute on Article Nine of the Uniform Commercial Code," 41 *Tul.L.Rev.* 785, 799 (1967).

4. Nathan & Marshall, *supra* note 2, at 497.

note (known as the "mortgage note") is executed and made payable to Bearer.[5] The mortgage note is then "paraphed 'ne varietur' for identification" with the act of collateral mortgage.[6] The final step in the perfection of the security device is the *pledge* of the collateral mortgage note and the act of mortgage itself as security for a particular debt, which is evidenced by another note, this one called a "hand note."

In April of 1987, Defendants Eloyease Watkins Lybrand, Ronald N. Lybrand, Jeanne Sutton Davis, and William C. Davis, Jr. executed an act of collateral mortgage, in the amount of $900,000, against property in St. Tammany Parish, Louisiana. They also executed a collateral mortgage note which was paraphed "ne varietur" for identification with the mortgage. The collateral mortgage note was then pledged to secure the hand note of Ronald Lybrand, in the amount of $115,000.

The hand note is in default and the parties have agreed that the balance owed on it as of June 1, 1992, was $124,885.61, plus interest thereafter at the rate of 13.375% per annum until paid, plus attorney's fees and costs.

The Federal Deposit Insurance Company (FDIC) is the holder and owner of the hand note and the collateral mortgage note, as receiver for Pontchartrain State Bank.

The only point on which the parties do not agree is whether the makers of the collateral mortgage and collateral mortgage note are personally liable on the debt represented by the hand note for the which the mortgage and mortgage note were pledged.

### The Law

As Judge Foret of Louisiana's Third Circuit Court of Appeal has observed, "the issue of whether or not the execution of a collateral mortgage and note creates personal liability for the maker is by no means settled." *Merchants & Farmers Bank & Trust v. Smith*, 559 So.2d 845, 849 (La. App. 3d Cir.1990) (Foret, J., dissenting), *cert. denied*, 563 So.2d 865 (La.1990).

Judge Foret is in a unique position to appreciate the import of that observation. Louisiana's Third Circuit has been home to many of the cases in which this question has arisen, and Judge Foret has been involved in most of those decisions. He served on the panel that decided *Bank of Lafayette v. Bailey*, 531 So.2d 294 (La.App. 3d Cir.), *cert. granted in part*, 533 So.2d 5 (La.1988), the linchpin case for the argument that collateral mortgages do create personal liability for the maker. He then served on the panel and wrote the opinion in *Concordia Bank & Trust Co. v. Lowry*, 533 So.2d 170 (La.App. 3d Cir.1988), *writ granted in part, reversed in part on other grounds*, 539 So.2d 46 (La.1989), which followed *Bailey's* lead as to the personal liability issue. But Judge Foret also filed a concurring opinion to ·his own majority opinion in *Lowry*, noting:

---

**5.** "The note is made payable on demand because of Louisiana Civil Code article 3170. This article provides that if a credit which has been given in pledge becomes due before it is redeemed by the pledgor, the creditor shall be justified in enforcing payment of the credit. By making the collateral mortgage note payable on demand, the collateral mortgagee is entitled to foreclose on the collateral mortgage note at any time.

The note is made out in bearer form so that it can be transferred by mere delivery. La.R.S. 10:3–202 (1983). If made payable to order, an indorsement would be required for a transfer. In order to use executory process, the indorsement would have to be in authentic form."
Note, *"Texas Bank of Beaumont v. Bozorg: The Supreme Court Addresses Collateral Mortgages,"* 46 *La.L.Rev.* 397, 398n8, 9 (1985).

**6.** "The words 'ne varietur' come from Latin and simply mean 'it must not be altered.' Paraphing means that the notary public signs the promissory note with his official signature, thereby certifying its genuineness, and marks or writes on it an inscription similar to the following:

"Ne Varietur for identification with an Act of Collateral Mortgage passed before me this ____ day of ____, 19__.
s/ Notary Public"
Paraphing, then, is nothing more than the Notary's act of signing and marking or writing on the promissory note. By paraphing the promissory note 'ne varietur,' the notary makes it inextricably bound with and identified with the act of mortgage so that the note thereby incorporates all the terms and conditions of the mortgage and certifies that it is genuine."
Nathan & Marshall, *supra* note 2, at 500–01.

I based the result in my opinion on the *Bailey* case and on Rubin's law review article.[7] Although I was on the panel in *Bailey*, I was never thoroughly convinced that it is correct. As for Rubin's ruminations in the law review article, he, himself, admits that his views may very well not be free from bias for the reasons which he states therein. I agree.

I have always believed, in my thirty years of law practice and on the bench, that the maker of a collateral mortgage and note which is pledged to a lender to secure the debt of a third party, does not render the maker *personally* liable to the lender in the event of default by the third party, beyond the value of the property mortgaged.

It seems to me that to hold the maker personally liable would require more than the mortgage and note, and pledge thereof. To hold the maker personally liable over and above the value of the property amounts to personal suretyship, which must be express in no uncertain terms. Nothing is clearer in our law than that suretyship must be express. I doubt that suretyship would be found in this case. However, since judgment went by default, a fortiori, that defense was not raised by appellants, and thus was not considered on appeal. But, my judgment tells me that appellants did not know or intend that they could possibly be held personally liable above and beyond the value of the mortgaged property.

*Lowry,* 533 So.2d at 175–176 (Foret, J., concurring).

In *Smith, supra,* Judge Foret was once again on a panel addressing the collateral mortgage personal liability issue. When that panel followed *Bailey* on the personal liability issue, Judge Foret filed a lengthy dissent. In that dissent, among other things, he called attention to Justice (now Chief Justice) Calogero's concurring opinion in granting the writ application in *Lowry.* Justice Calogero wrote:

I concur in this Court's decision to grant the writ solely for the purpose of clarify-ing the interest award in the judgment and remanding the case to the trial court for review of the attorney's fee award, and to otherwise deny the writ. As noted in the concurring reasons assigned to the court of appeal's opinion by Judge Foret, there is a pre-legal question, not previously resolved by this Court, as to whether the maker of a collateral mortgage note may be held personally liable, as opposed to liable solely to the extent of the value of the mortgaged property, as a result of a third party's default on the hand note.... In their writ application, however, relators did not assign error to the court of appeals' finding that they were personally liable for the amount of the hand note. Instead, relators contested only the amount of the judgment, as calculated by the courts below. They did not ask this Court to grant a writ for the purpose of overturning the finding of personal liability. For that reason we have no cause to examine that aspect of the court of appeal's ruling and our denial in part of this writ, which in any event would not have precedential authority, does not in any way suggest how the personal liability issue should be resolved. If we were presented with an application raising this issue, I would be inclined to favor granting such a writ so that this Court could consider and decide the issue.

*Lowry,* 539 So.2d at 47 (Calogero, J., concurring).

A

■ Thus, quite clearly, the instant case raises an issue that is unsettled in Louisiana law. Under such circumstances, where this court is bound by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply substantive state law, yet the state's highest court has not spoken on an issue, this court is essentially charged with the task of divining what the state's supreme court would do if it were considering the same controversy. *See Green v. Walker,* 910 F.2d 291, 293–94 (5th Cir.1990) ("The decision of an intermediate

---

7. *See infra,* note 12 and accompanying text.

appellate state court guides, but does not necessarily control a federal court's determination of the applicable state law." *Id.* at 294.) *See also Shelp v. National Surety Corp.,* 333 F.2d 431, 439 (5th Cir.), *cert. denied,* 379 U.S. 945, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964) ("There is no *Erie* obligation when there is 'persuasive data that the highest court of the state would decide otherwise' than the intermediate appellate ... court."), *quoted in Green,* 910 F.2d at 294.

In pursuing that mission, this court has reviewed the body of case law and commentary addressing the issue. Mr. Max Nathan, professor and practitioner has written extensively on this subject. In conjunction with others, he has published three commentaries: "The Collateral Mortgage," 33 *La.L.Rev.* 497 (1973) (with H. Gayle Marshall); "The Collateral Mortgage: A Reassessment and Postscript," 36 *La. L.Rev.* 973 (1976) (with H. Gayle Marshall); and "The Collateral Mortgage: Logic and Experience," 49 *La.L.Rev.* 39 (1988) (with Anthony P. Dunbar).

In the earliest of those articles, Professor Nathan observed: "As the very name implies, the device contemplates that the mortgage note does not represent an actual debt but will be issued as collateral to secure such debts." 33 *La.L.Rev.* at 521. As Professor William Crawford, said more explicitly in another article in the same law review,

> [i]t is the intent of the parties that the hand note represent the obligation.... The collateral mortgage note itself represents no obligation or indebtedness at all.... The fact that the collateral mortgage note and mortgage are pledged properly to secure the payment of the hand note is only the execution of a security device for payment of the debt represented by the hand note. The contract of pledge would not seem to supply any obligation to which the collateral mortgage is accessory.

Crawford, "Executory Process and Collateral Mortgages—Authentic Evidence of the Hand Note," 33 *La.L.Rev.* 535, 535–37 (1973).

By 1988, however, Professor Nathan was writing: "the ne varietur note is a separate, viable· negotiable instrument that *may* give rise to personal liability on the part of the maker." 49 *La.L.Rev.,* at 42 (emphasis added). Nathan drew this possibility from two cases: *Central Progressive Bank v. Doerner,* 365 So.2d 263 (La.App. 1st Cir.1978); and *Central Bank v. Bishop,* 375 So.2d 149 (La.App.2d Cir.), *writ denied,* 378 So.2d 435 (La.1979).

In *Doerner,* a "collateral mortgage note of $10,500.00 plus 10% per annum interest and 25% attorney fees was pledged as security for the hand note of $17,472.00 plus 12% per annum interest and 25% attorney fees." *Doerner,* 365 So.2d at 264. After default, "the plaintiff instituted [an] executory proceeding for the balance of $12,-925.89 due, together with interest at the rate of 8% per annum ... and 25% attorney fees on both principal and interest."[8] *Id.*

At the sheriff's sale, the property associated with the collateral mortgage sold for $18,600.00. *Id.*

The court observed that "[i]n a suit on collateral mortgage, the seizing creditor can recover a sum no greater than that represented by the collateral note. Therefore, the total indebtedness of the hand note secured by the collateral mortgage is limited to the amount of $13,674.50."[9] *Id.* at 265 (citing Nathan & Marshall, "The Collateral Mortgage: A Reassessment and Postscript," 36 *La.L.Rev.* 973 (1976)).

The personal liability of a maker who pledges a collateral mortgage note on behalf of a third party's hand note was not at issue in the case. Also, since the mortgaged property brought more at sale than the amount due under the collateral mortgage note or the hand note, there was no reason for personal liability beyond the val-

---

**8.** The total balance due, including principal, interest, and attorney fees was $16,821.58. *Id.* at 265.

**9.** The amount was computed thus: "Principal of $10,500.00; interest at 10% per annum from June 2, 1977 of $539.60; and attorney fees of $2,634.90." *Id.* at 265n3.

ue of the property to be considered. Further, it is one thing to say that a seizing creditor can recover no more than the amount of the collateral note in a context in which the hand note was for a *greater* sum than the collateral note *and* the debtor is also the maker of the collateral note and mortgage. It does not necessarily follow, however, that a seizing creditor is entitled to the full value of the collateral note of a third party when the underlying property brings less at sale than the value of that collateral note.

In *Bishop, supra,* "[t]he *only issue* ... [was] the proper date from which interest should be calculated on a collateral mortgage note." *Bishop,* 375 So.2d at 149 (emphasis added). A collateral mortgage note "in the amount of $10,000, bearing 10% interest from date" was pledged to the bank on the date of its execution (July 7, 1971) to secure a loan on a hand note. That initial loan was repaid, but the bank retained possession of the collateral note.

On March 20, 1973, the maker pledged the same collateral note to the bank for another loan of $12,000. That note was never repaid, despite several renewals, each of which capitalized the interest from the preceding note.

The dispute in the case concerned the proper date from which interest should be calculated. The trial court calculated interest from the date the note was pledged for the specific debt, March 20, 1973. The appellate court, however, agreed with the bank that "the collateral note is a separate negotiable instrument which stipulates interest shall be due from that date [i.e., the date of its making]; and that according to the law of pledge, [the bank] may enforce the payment of the underlying obligation to the full extent of the pledge, which would include interest from July 7, 1971." *Id.* at 150.

The court reasoned: "Although the pledge of the collateral note did not become

effective until March 20, 1973, part of its value stipulated on the face of the note was 10% interest from July 7, 1971. The collateral note is a separate negotiable instrument which is enforceable by its own terms.... By pledging the collateral note to the bank, Bishop obligated himself to pay $10,000 plus 10% interest from July 7, 1971 in the event the loan of March 1973 was not repaid." *Id.*

Again, neither personal liability beyond the value of the mortgaged property nor the pledge of a collateral note on behalf of a third party was at issue, and this court finds Mr. Nathan's conclusion that a collateral mortgage note "may give rise to personal liability on the part of the maker" unsupported by the meager facts of *Doerner* and *Bishop.*[10]

## B

In *First Guaranty Bank v. Alford,* 366 So.2d 1299 (La.1978), one of the rare cases in which the Louisiana Supreme Court has come even close to this issue, a husband's hand note was secured by a collateral mortgage note which was, in turn, secured by a collateral mortgage on the wife's separate property. After the canceling of that initial hand note, the husband then executed a series of notes, reciting that each was secured by the same collateral mortgage as was the original. After the bank sued the husband and wife in solido, the wife was successful on a motion for summary judgment, affirmed by the supreme court, arguing that her collateral mortgage and the collateral mortgage note had been pledged only for the initial debt. The court opined:

The bank's retention of the collateral mortgage note after extinguishment of the ancillary debt note (or hand note), without either an outset pledge to secure future obligations or a subsequent pledge by the obligor on the collateral note [*i.e.,* the wife] gives the bank no security interest in the collateral mortgage note. If this were not the case any

---

**10.** In fact, the *Bishop* court's finding that the pledged collateral note obligated the pledgor to pay interest from its facially stipulated date, even if accepted as accurate, required neither the finding that a "collateral note is a separate

negotiable instrument which is enforceable by its own terms" nor the attendant speculation that a collateral note creates personal liability for the maker.

party, even with the bank's full knowledge of the circumstances and acquiescence therein, could pledge, without any interest therein, the collateral mortgage of another to secure his own obligation without the consent of the obligor on the collateral mortgage note, simply because the obligee-bank has possession of and has not returned a collateral mortgage note pledged on an earlier extinguished obligation. It goes without saying that this cannot be.

*Id.* at 1303. Unfortunately, *Alford* offers little guidance for the present controversy, beyond a reflection of the Louisiana Supreme Court's tendency to require that obligations associated with collateral mortgages be clearly expressed.

Then comes *Bailey, supra,* an appellate opinion by a panel which included Judge Foret. In that case, a husband and wife executed a collateral mortgage and collateral mortgage note in the amount of $250,-000, which they pledged to secure any indebtedness of the husband up to $250,000. The suit was for a deficiency judgment, after the sheriff's sale of the subject property brought some $37,000 less than the amount due at the time of default.

The state's third circuit court observed: "The collateral mortgage note being pledged for an obligation evidenced by the hand note executed by [the husband] bound both [husband and wife], in solido, for payment of that obligation up to the full amount of the collateral mortgage note." *Bailey,* 531 So.2d at 298 (citing *Chaffe v. Whitfield,* 40 La.Ann. 631, 4 So. 563 (1888); *Zibilich v. Rouseo,* 157 La. 936, 103 So. 269 (1925)).[11] That a deficiency judgment should be available against the maker of a collateral mortgage and collateral mortgage note pledged on behalf of his own debt is hardly surprising, of course. The

*Bailey* court's extension of the deficiency judgment to the wife when the debt on the hand note was the husband's alone is problematic, however, in the opinion of this court.

*Bailey* was followed by *Lowry,* the case in which Judge Foret, concurring in his own majority opinion, criticized *Bailey,* even while acknowledging its influence on that majority opinion. In *Lowry,* six members of the Lowry family executed a collateral mortgage in favor of the bank for $100,000. It was pledged to secure the indebtedness of any of the six. After default by one of the six on a note deemed to be secured by the collateral mortgage, judgment was rendered against all six of the makers for $74,453.14.

In the course of its deliberation, the court recited:

> [W]hile it is established that the hand note is the debt instrument in a collateral mortgage arrangement, it is equally clear that the maker of the collateral mortgage note is personally liable thereon. A collateral mortgage note, such as the one signed by appellants in the instant case, is a negotiable instrument. The mere fact that it is paraphed for identification with a collateral mortgage does not alter its nature or effect. Accordingly, the collateral mortgage note creates a personal obligation for which the maker is liable. It therefore follows that even though the debt is incurred in connection with a hand note in a collateral mortgage arrangement, the maker of the collateral mortgage note is personally liable for the indebtedness owed. However, such personal liability is limited to the lesser of the face amount of the collateral mortgage note and the amount owed in connection with the hand note.

*Lowry,* 533 So.2d at 172–73 (citing Rubin, "Work of the Louisiana Appellate Courts for the 1978–1979 Term: Security De-

---

11. Neither of the cases cited is at all close to the question of personal liability for makers of collateral mortgages that are pledged for the debts of third parties. *Chaffe* concerned a "lack of consideration" argument against enforcement of a collateral mortgage note. 4 So. at 564. *Zibi-*

*lich* considered whether a pledgee who recovered a judgment against a collateral mortgage debtor could assign that judgment to others and they could then sue on the notes held in pledge. The court answered in the affirmative. 103 So. at 273.

vices," 40 *La.L.Rev.* 572 (1980) and *Bailey, supra.*) [12]

It is worth noting that that language, which has been much quoted subsequently, is totally unnecessary to the resolution of the dispute before the court in that matter. Rather, the case was more directly concerned with such issues as whether the subject hand note was in fact secured by the collateral mortgage note that all six members of the family had signed. It provides no information concerning the value of the property that stood behind the collateral mortgage. Again, the question of personal liability beyond the value of the mortgaged property was not considered.

It is also worth observing that the *Lowry* court noted "that our research does not reveal that the Louisiana Supreme Court has ever passed on the question of whether the maker of a collateral mortgage and note made to secure the debt of a third party becomes himself personally liable, even beyond the value of the property mortgaged." *Id.* at 173n1.

In fact, when the Louisiana Supreme Court did take up writs on the case, Justice Calogero, as indicated above, explicitly challenged that notion, while recognizing that the issue was not before that court on appeal. *Lowry*, 539 So.2d at 47 (Calogero, J., concurring), quoted *supra.*

In *Merchants and Farmers Bank & Trust v. Smith, supra,* an attorney, Rivers, cosigned a collateral promissory note with a friend, Smith, in the amount of $15,000. He also cosigned a collateral mortgage on property belonging to him to secure future advances. Money was advanced to Smith on a hand note in the amount of $13,500.

When Smith did not repay the loan, "[t]he bank sued Rivers on the collateral mortgage note for the indebtedness due under the handnote, and asked for recognition of its mortgage on the immovable property. Rivers denied liability beyond

the value of the property." *Smith*, 559 So.2d at 846.

At the trial, Rivers "testified that the intention of all parties (the notes were never negotiated) was that his liability would be limited to the property mortgaged." *Id.* at 847. This testimony was not rebutted at trial, except by the documents which, as the appellate court put it, "said what they said." *Id.* Applying a standard of manifest error on review, the appellate court affirmed the lower court's holding "that the maker of a collateral mortgage note is personally liable for the indebtedness sued upon, up to the full amount of the collateral mortgage note." *Id.* (citing *Bailey* and *Lowry* ).

This provoked the lengthy dissent by Judge Foret which is quoted in part above. In another part of that dissent, Judge Foret observed:

> Rivers established by parol evidence the parties' agreement that he would not be personally liable for the indebtedness created by the hand note. He stated unequivocally that it was the parties' intention to create an in rem obligation insofar as he (Rivers) was concerned. This being established, we should give effect to the parties' true intention and hold that Rivers cannot be held personally liable on the indebtedness sued upon. His liability, as per the agreement of the parties, should go no further than the value of the property mortgaged.
>
> The majority relies on boiler-plate language found in all standard notes and mortgages to find that Larry Rivers lied in his testimony as to the agreed upon liability. If personal liability was intended, the Bank could have simply required that Rivers sign the *hand note* as a co-maker along with Smith; or that Rivers sign a continuing guaranty or any other of an infinite number of security devices, the number of which is limited only by

---

12. Interestingly, Mr. Rubin, in an extensive extrapolation from *Doerner* and *Alford,* that reaches the conclusion that "a collateral mortgage note does impose personal liability on the maker," candidly notes that "the author hopes his views are not influenced by the fact that he is counsel for creditors in several lawsuits in which this position is being taken." Rubin, 40 *La.L.Rev* at 583, 582n52.

the ingenuity of the Bank Employees and/or attorneys.

*Id.* at 848 (Foret, J., dissenting).

## C

To summarize, the notion that Louisiana law imposes personal liability on the maker of a collateral mortgage note pledged on behalf of the debt of a third party has arisen and been "confirmed" in the following manner.

First, a Louisiana appellate court held that a creditor's recovery on a collateral mortgage was limited by the amount of the collateral note—in a case in which the debt was greater than the amount of the collateral mortgage note. (*Doerner,* citing Nathan and Marshall, 36 *La.L.Rev.* 973 (1973)).

Second, an appellate court held that an obligor was obligated to pay interest from the date of the collateral mortgage note rather than from the date on which it was pledged, saying that the note stipulated such on its face and reciting that "[a] collateral mortgage note is a separate negotiable instrument which is enforceable by its own terms." (*Bishop,* where "personal liability" was not at issue.)

Third, a commentator, relying on those two cases extrapolated the possibility that the ne varietur note's existence as "a separate, viable negotiable instrument ... give[s] rise to personal liability on the part of the maker." (Nathan) Another commentator, admitting his creditor-bias, reached the same conclusion. (Rubin).

Fourth, an appellate court held a husband and wife liable in solido on a deficiency judgment against the husband's hand note. (*Bailey,* relying on cases that had nothing to do with the "personal liability" issue.)

Fifth, another court accepted all the foregoing unquestioningly and recited more than necessary for the resolution of its facts, a quote that is then repeated by others. (*Lowry*)

Sixth, yet another court behaved similarly (*Smith,* citing *Bailey* and *Lowry* ).

### Conclusion

In the opinion of this court, several things are clear:

1. The arguments of Messrs. Nathan and Rubin represent a change in Louisiana law from its traditional understanding of the functions of the collateral mortgage. Otherwise, they would not be at such pains to make a case for the personal liability notion.

2. The Louisiana Supreme Court has not addressed the issue, and its Chief Justice has at least indicated some skepticism.

3. The current status of the law on this issue is the result of a series of statements in dicta and academic speculation outside the confines of a "case or controversy."

4. "Suretyship must be express and in writing." La.C.C. art. 3038 (1992). "Solidarity of obligations shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." La.C.C. art. 1796 (1987).

5. It is true that, as Mr. Nathan suggests, a collateral mortgage could be explicitly denominated an *in rem* mortgage. 49 *La.L.Rev.* at 43. But it is also true that the personal liability of the maker of the collateral mortgage could be explicitly expressed by having him or her sign as co-maker of the hand note, or by other means.

In this court's opinion, the maker of the collateral mortgage and collateral mortgage note who pledges that mortgage and note to secure the hand note of a third party is typically not asked to co-sign the hand note because there is a common understanding that liability is limited to the value of the property that stands behind the collateral mortgage.

The entire collateral mortgage scheme is one designed for the benefit of creditors [13]—to achieve retroactive ranking of future advances. The collateral mortgage note, even though it is styled a negotiable instrument, is a mere legal formality in

---

**13.** It is, for example, typically a "bearer note" so as to facilitate the creditor's use of executory process. It is a "demand note" so as to simplify the creditor's foreclosure. *See supra,* note 5.

that overall scheme. To allow a creditor then to use that device to impose personal liability beyond the value of the mortgaged property is, at a minimum, to sanction the circumvention of Louisiana's strict requirement that personal suretyship be express.

For those reasons, this court is of the opinion that the Louisiana Supreme Court, if faced with this issue, would not agree with those lower state courts that have recited, often without the issue being squarely before them, that collateral mortgages create such personal liability. Accordingly, Judgment will be rendered in favor of the Defendants and against the Plaintiff in the present matter.[14]

IT IS SO ORDERED.

---

**14.** Unfortunately, this court lacks a procedure for certifying this question to the Louisiana Supreme Court for a definitive resolution. Should this matter be appealed, however, the United States Fifth Circuit Court of Appeals may well wish to use its established procedures for making such a certification.