628 So.2d 33 (1993)
COMMERCIAL NATIONAL BANK IN SHREVEPORT, Plaintiff-Appellant,
v.
SUCCESSION OF Graham W. ROGERS, et al., Defendants-Appellees.
No. 24917-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1993.
Opinion Amending Original Opinion on Limited Grant of Rehearing December 1, 1993.
*34 Cook, Yancey, King & Galloway by Stephen R. Yancey, II, Shreveport, for appellant.
Peatross, Greer & Frazier by John M. Frazier, Shreveport, for appellees, David L. Bennett and Dorothy Stafford Bennett.
William H. Ledbetter, Jr., Bossier City, for appellees, Raymond J. Hartsfield and Lawanna Mae Beck Hartsfield.
David White, Bossier City, for appellee, Gayle J. Rogers, as Executrix of the Succession of Graham W. Rogers.
Before SEXTON, NORRIS, HIGHTOWER, STEWART and WILLIAMS, JJ.
WILLIAMS, Judge.
Appellant, Commercial National Bank (CNB), appeals the trial court's judgment denying its demand for a deficiency judgment against the appellees.
CNB argues the trial court erred in finding that the failure to separately appraise each tract of immovable property described in the mortgage is a defect in the appraisal process of such a fundamental nature that the seizing creditor is prevented from obtaining a deficiency judgment. CNB also argues that the trial court erred in finding that the makers of a collateral note and a collateral mortgage have no personal liability for the underlying indebtedness if they did not also execute the hand note. We affirm in part and reverse in part.

FACTS
On October 21, 1985, Raymond J. Hartsfield, David L. Bennett, and Graham W. Rogers executed a promissory note in the principal sum of $350,000.00 in favor of CNB ("The Hand Note"). Their spouses, Gayle J. Rogers, Lawanna Mae Beck Hartsfield, and Dorothy Stafford Bennett did not sign the hand note.
On the next day, October 22, 1985, Graham W. Rogers, Gayle J. Rogers, Raymond J. Hartsfield, Lawanna Mae Beck Hartsfield, David L. Bennett, and Dorothy Stafford Bennett executed a promissory note in the principal sum of $500,000.00, due on demand and payable to any future holder ("Mortgage Note"). This mortgage note was secured by a collateral mortgage of three tracts of land in Bossier Parish, Louisiana. The collateral mortgage was executed by all of the makers of the mortgage note. The mortgage note was pledged to secure the hand note.
On February 21, 1991, CNB filed a petition for executory process foreclosing on the mortgage and requesting that the property be sold at judicial sale with appraisal. In response to the notice provided by the sheriff, the property was appraised by one of the appellants, David Bennett, for $300,000.00. CNB's appointee appraised the property at $154,000.00 and a third party appraiser, appointed by the sheriff, appraised the property at $220,000.00. On May 1, 1991, the sheriff sold the property at judicial sale, in globo, resulting in a credit to appellants of $148,529.27.
On June 14, 1991, CNB filed a Petition for Deficiency Judgment. The appellees answered alleging noncompliance with the Louisiana Deficiency Judgment Act, LSA-R.S. 13:4106, et seq. Appellant, Dorothy Stafford Bennett, further asserted that she could not be held personally liable since she only signed the mortgage note and she had not signed the hand note.
On March 16, 1992, CNB filed a motion for summary judgment. The appellees opposed the motion on the ground that there was no separate appraisal of the three tracts of land prior to the sale by executory process and that neither of the three wives had signed the hand note. The motion for summary judgment was denied.
The case was submitted for decision on the basis of the testimony of J.L. Bogan, an officer of CNB, and a "Joint Stipulation of Facts and Issues of Law." The parties stipulated that none of the spouses intended to become personally obligated for the indebtedness by signing the collateral mortgage and mortgage note. It was also stipulated *35 that at the time of the loan transaction there was no discussion of the personal liability of the spouses. The parties further stipulated that the property was not separately appraised and that the debtors never requested separate appraisals.
The trial court resolved both issues presented in favor of appellees. In its opinion, the trial court held that Gayle J. Rogers, Dorothy Stafford Bennett, and Lawanna Mae Beck Hartsfield had no personal liability to CNB and that the failure to separately appraise the three tracts barred CNB from obtaining a deficiency judgment against the defendants.
CNB appeals alleging the trial court erred in its ruling on both issues.

DISCUSSION

I. The Appraisal Process:

It is well settled that a creditor seeking to obtain a deficiency judgment has the burden of establishing compliance with two criteria: (1) insufficiency of the sale proceeds to satisfy the underlying debt; and (2) sale of the seized property after appraisal in accordance with the codal and statutory requirements for executory proceedings. First Federal Savings and Loan Assn. of New Iberia v. Moss, 616 So.2d 648 (La.1993); First Acadiana Bank v. Bieber, 582 So.2d 1293, 1296 (La.1991); First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834, 842 (La.1988).
Appellant argues that First Financial Bank, FSB v. Hunter Forest Limited Partnership, 456 So.2d 1380 (La.1984) is controlling in regard to the appraisal issue presented in this case. We agree.
In Hunter Forest, supra, First Financial Bank brought a proceeding against Hunter Forest Partnership, Ltd. to foreclose by executory process under a special mortgage affecting a tract containing over 115 condominiums, lots, and parcels of land. The partnership moved for, and obtained, an order designating that each condominium, lot and parcel, be sold individually rather than in globo and First Financial unsuccessfully sought to have the court order rescinded. The Supreme Court granted writs. It held that the partnership was not entitled to designate the order in which items or portions of property would be sold in an executory proceeding brought against it by First Financial, even though the property seized under the mortgage was divided or divisible, since the statute permitting such designation is not applicable to executory proceedings. LSA-C.C.P. Arts. 2295, 2631.
In Moss, supra, the Louisiana Supreme Court explained its decision in Hunter Forest as follows:

Hunter Forest, as the Chenault court recognizes, does not stand for the proposition that an in globo sale is unauthorized in an executory proceeding; instead, it lends support to the converse proposition that an in globo sale is authorized in an executory proceeding when a single mortgage encompasses separate properties.
Moss, supra, 616 So.2d at 652 (citations omitted).
However, LSA-R.S. 13:4365(C) sets forth an exception to the creditor's right to compel an in globo sale. This statute provides that "[t]he property seized must be appraised with such minuteness that it can be sold together or separately" (emphasis added). The "minuteness" requirement allows the debtor to establish that an in globo sale would have a prejudicial effect in that a separate sale would be more advantageous as it would secure a potentially higher bid price. See International Harvester Credit Corp. v. Majors, 467 So.2d 1251 (La.App. 2d Cir. 1985).
As stated above, the parties in the instant case stipulated that the debtors did not request separate appraisals of the properties. Since the appellees failed to establish prior to the sale that the in globo sale of the property in question would be prejudicial and that a separate sale would be monetarily advantageous, they cannot now complain of the appraisal process. See Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132 (La.App. 1st Cir.1988).
The debtors' failure to invoke the exception of LSA-R.S. 13:4365(C) prior to the sale, leaves the creditor's right to direct the mode *36 of the sale intact. See Baton Rouge Petroleum Center, supra. Therefore, we find that the trial court's ruling that the appraisal process in the instant case was so fundamentally defective as to preclude CNB from obtaining a deficiency judgment was in error.

The Collateral Mortgage:
The next issue presented for review is whether the makers of a collateral mortgage and a collateral mortgage note are personally liable for the total underlying indebtedness even though they did not execute the hand note. In other words, whether the maker of a collateral mortgage and note pledged to secure the debt of a third party becomes personally liable for the underlying indebtedness.
This issue is far from settled under our jurisprudential law. In fact, the Louisiana Supreme Court has never squarely addressed this issue. However, we have for our consideration and review at least three Third Circuit cases and one federal district court case that has addressed this issue. See Pontchartrain State Bank v. LyBrand, 799 F.Supp. 633 (E.D.La.1992); Merchants and Farmers Bank & Trust v. Smith, 559 So.2d 845 (La.1990); Concordia Bank & Trust v. Lowry, 533 So.2d 170 (La.App. 3d Cir.1988); Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3d Cir.1988). In sum, the Third Circuit found on at least three occasions that personal liability attached even though the maker of the collateral mortgage and note did not execute the hand note.
In Pontchartrain, supra, the federal district court judge disagreed with the Third Circuit and found no personal liability beyond the mortgaged property. After a review of the jurisprudential authority and the writings of some of our notable legal scholars, we agree and conclude that under the facts of this case, the makers of the collateral mortgage note who did not execute the hand note have no liability beyond the value of the mortgaged property. The resolution of this issue requires a basic review of the "collateral mortgage package."
The collateral mortgage package operates as an open line of credit secured by a mortgage. The package consists of an act of mortgage, a collateral mortgage note (the "ne varietur" note), and a pledge of the ne varietur note to secure an indebtedness pursuant to a collateral pledge agreement to secure one or more hand notes. See Max Nathan, Jr. & Anthony P. Dunbar, The Collateral Mortgage: Logic and Experience, 49 La.L.Rev. 39 n. 3 (1988) (only two documents are actually required for collateral mortgage package). It is a device peculiar to the State of Louisiana. We agree with Mr. Max Nathan's initial view of this security device: "As the very name implies, the device contemplates that the mortgage note does not represent an actual debt but will be issued as collateral to secure such debts." Max Nathan, Jr. & H. Gayle Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 521 (1973).[1]
Another noted legal scholar has also expressed this view. In his article on the subject, Professor William Crawford explained the collateral mortgage package as follows:
[i]t is the intent of the parties that the hand note represent the obligation.... The collateral mortgage note itself represents no obligation or indebtedness at all.... The fact that the collateral mortgage note and mortgage are pledged properly to secure the payment of the hand note is only the execution of a security device for payment of the debt represented by the hand note. The contract of pledge would not seem to supply any obligation to which the collateral mortgage is accessory.
William E. Crawford, Executory Process and Collateral MortgagesAuthentic Evidence of the Hand Note, 33 La.L.Rev. 535, 535-37 (1973).
In the instant case, we find that the wives did not personally obligate themselves by executing the collateral mortgage and note. Recovery against them is limited to the value of the mortgaged property. To reach a contrary result from our above stated conclusion, we would have to find that the wives in *37 the instant case executed a pledge of the mortgaged property and a personal guaranty of payment of the underlying indebtedness and any future advances made. The principles of suretyship will not allow such a finding. LSA-C.C. Art. 3038 provides "suretyship must be express and in writing."
As stated above, it is stipulated that the wives/appellees did not execute the hand note. Nor did they intend to become personally liable by signing the collateral mortgage and the collateral mortgage note. There was no discussion of personal liability at the time the collateral mortgage and note was signed. CNB could have personally obligated the wives by requiring that they sign the hand note as co-makers or that they execute some other document guaranteeing payment of the underlying debt and expressing an intent to be personally bound. See Pontchartrain v. LyBrand, supra, 799 F.Supp. at 640. This is particularly true under the facts of this case, because all six of the mortgagors executed the collateral mortgage and note the day after the hand note in question was executed. The bank could have obtained all six signatures on the hand note and the collateral mortgage and note at the same time. Since the wives/appellees did not sign the hand note, they are not personally liable for the principal and interest due. CNB can only proceed against the mortgaged property with respect to these three appellees. The trial court was correct in denying the petition for deficiency judgment filed against the wives.

CONCLUSION
For the above stated reasons, we reverse the trial court's judgment dismissing appellant's demand for a deficiency judgment against the defendants, Succession of Graham Rogers, David L. Bennett, and Raymond J. Hartsfield. We affirm that portion of the trial court's judgment dismissing Gayle J. Rogers, Dorothy Stafford Bennett and Lawanna Mae Beck Hartsfield from the suit for deficiency judgment. All costs to be paid by appellant.
AFFIRMED IN PART; REVERSED IN PART.
NORRIS and STEWART, JJ., concur in the result.
HIGHTOWER, J., concurs in part; dissents in part.
SEXTON, J., dissents for the reasons assigned by HIGHTOWER, J.
HIGHTOWER, Judge, concurring in part; dissenting in part.
In relation to the first issue, I fully agree with the reversal.
However, with respect to the second issue of the case, viz:
Is the liability of the maker of a collateral note and mortgage, who fails to execute the handnote, limited to the value of the mortgaged property?
I respectfully dissent.
Granted, the answer has by no means been clearly resolved. Nevertheless, after carefully reviewing the authorities hereinafter mentioned, I join with my brethren of the third circuit, who have consistently held that the maker of such an instrument is personally liable, even beyond the value of the mortgaged property. Such liability, of course, does not exceed the lesser of the face amount of the collateral mortgage note or the existing handnote indebtedness. See First Bk. of Natchitoches & Trust Co. v. Chenault, 576 So.2d 1123 (La.App. 3d Cir.1991); Merchants & Farmers Bank & Trust v. Smith, 559 So.2d 845 (La.App. 3d Cir.1990), writ denied, 563 So.2d 865 (La.1990); Concordia Bank & Trust Co. v. Lowry, 533 So.2d 170 (La.App. 3d Cir.1988), reversed in part on other grounds, 539 So.2d 46 (La.1989); Bank of Lafayette v. Bailey, 531 So.2d 294 (La.App. 3d Cir.1988), writ granted in part, 533 So.2d 5 (La.1988).
In an excellent discussion supporting this position, Professor Michael H. Rubin observes that a collateral mortgage note is not an "in rem" obligation, and that restricting the creditor to the proceeds realized from mortgaged property would destroy the negotiability of the note, which would no longer constitute an unconditional promise to pay a sum certain. Continuing, he asserts that a nonnegotiable note could not be transferred by mere delivery, that authentic evidence of *38 transfers would then be necessary in executory proceedings, and that the utility of collateral mortgages would thus be effectively destroyed. See M. Rubin, Work of Appellate Courts1978-1979, Security Devices, 40 La. L.Rev. 572, 578-583 (1980).[1] Additionally, as acknowledged by the majority, the latest commentary by Professor Max Nathan on the subject also suggests personal liability by the maker of a collateral note.
In Central Bank v. Bishop, 375 So.2d 149 (La.App. 2d Cir.1979), writ denied, 378 So.2d 435 (La.1979), we concluded that
[t]he collateral note is a separate negotiable instrument which is enforceable by its own terms.... Since the loan was not repaid, the bank is entitled to collect the amount owed on the underlying obligation up to the full amount stipulated on the face of the collateral note.
In that instance, we resolved that the collateral note obligated the maker to pay interest from the date stipulated thereon. Surely, if the facially stipulated interest date is to control, then the face amount of the note must have equal efficacy.
Thus, notwithstanding the contrary views expressed in Ponchartrain State Bk. v. Lybrand, 799 F.Supp. 633 (E.D.La.1992), I conclude that a collateral mortgage note imposes personal liability on the maker.
Accordingly, I would reverse the trial court as to both issues under appeal.

OPINION AMENDING ORIGINAL OPINION ON LIMITED GRANT OF REHEARING
PER CURIAM.
Appellant's application for rehearing is granted for the limited purpose of expressly setting forth an award. Accordingly, having reversed, in the original opinion, the trial court's judgment dismissing appellant's demand for a deficiency judgment against the defendants, Succession of Graham W. Rogers, David L. Bennett, and Raymond J. Hartsfield, we now render, on rehearing, judgment in accordance with the stipulations of the litigants:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of plaintiff, COMMERCIAL NATIONAL BANK IN SHREVEPORT, and against defendants, SUCCESSION OF GRAHAM W. ROGERS, DAVID L. BENNETT and RAYMOND J. HARTSFIELD, in solido, in the full sum of $290,720.57, plus interest in the amount of $21,314.19 as of February 1, 1991, with interest continuing on said principal amount thereafter at the rate of twelve (12%) percent per annum until paid, subject to a credit of $148,529.27 as of May 1, 1991.
Reasonable attorney fees actually incurred by the plaintiffs shall be fixed by the trial court after rule to show cause or by agreement of the parties. The attorney fee shall not exceed ten percent of the total principal and interest awarded.
Except as amended on rehearing, our original opinion is undisturbed.
Defendants are taxed with costs, here and below.
NOTES
[1] Professor Nathan later wrote an article where he concluded that the ne varietur note was a separate viable instrument that "may" give rise to personal liability on the part of the maker. Nathan & Dunbar, The Collateral Mortgage: Logic and Experience, 49 La.L.Rev. 39, 42.
[1] Although not eliminating the collateral mortgage device, recent revisions to LSA-C.C. Arts. 3278-3298, 3314 have provided a more direct means for achieving the same result through a conventional mortgage. See M. Rubin & R. Grodner, Review of Recent Developments: 1991-1992, Security Devices, 53 La.L.Rev. 969, 991-997 (1993).