h PEATROSS, J.
This appeal arises from a jury finding that the road in the area of milepost 83.5 on U.S. Highway 84 in Winn Parish was not defective and did not create an unreasonable risk of harm to either Larry Wyn-der, Jr. (“Wynder”) or Michael Allen Calvert (“Calvert”), who were both killed when their vehicles collided on this road. A lawsuit was filed by the families of both decedents against, among other defendants, the State of Louisiana, Department of Transportation and ' Development (“DOTD”), alleging the failure to properly maintain the road where the accident occurred. Both the plaintiff representing the decedent Calvert and the plaintiff-in-tervenors representing the decedent Wyn-der (collectively “Plaintiffs”) appeal the judgment of the trial court following the jury verdict. For the reasons stated herein, we affirm.
FACTS
On September 20, 1996, at approximately 7:45 a.m., a white Ford pickup truck driven by Wynder left the eastbound lane of U.S. Highway 84 in the area of milepost 83.5 in Winn Parish, rotated counterclockwise and collided with a westbound Dodge pickup truck driven by Calvert. The impact killed Calvert instantly. Wynder later died at the accident scene. There were no eyewitnesses and it had been raining the morning of the accident.
Calvert was survived by one son, Robert Victor Calvert, who was ten years of age at the time of his father’s death. Robert’s mother, Tammy Joe Calvert Boren, brought suit on Robert’s behalf against DOTD for the wrongful death of Calvert. Subsequently, Wanda Wynder, the widow of |2Wynder, intervened both individually and on behalf of Chelsea Jene Wynder, the minor child of Wynder, against DOTD for the wrongful death of Wynder. Plaintiffs alleged that the road in the area of milepost 83.5 on U.S. Highway 84 was defective and created an unreasonable risk of harm to Calvert and Wynder; that DOTD knew or should have known, through actual or constructive knowledge, of the unreasonable and dangerous condition of the road; and that DOTD failed to correct the condition.
A jury trial began on October 29, 2001, in the Eighth Judicial District Court in Winnfield, Louisiana. At trial, all witnesses were called by Plaintiffs, with DOTD presenting no witness testimony. Duaine Evans (“Evans”), a witness for Plaintiffs, was accepted by the court as an expert in the fields of traffic safety and accident reconstruction. Approximately six months after the accident, Evans investigated the road at milepost 83.5 and he testified that he found ruts in the road in the eastbound lane, the lane in which Wyn-der was traveling. He concluded that the differential rut depth for the right and left wheels produced a lateral force which caused Wynder’s truck to pull to the right and Wynder had responded to the pulling force by steering to the left toward the westbound lane. According to Evans, this steering to the left caused the vehicle to go out of control and to rotate counterclock *1122 wise as it entered the westbound lane. When Wynder’s vehicle entered the westbound lane, Calvert’s vehicle hit the passenger side of Wynder’s vehicle.
Evans also testified that water in the ruts could possibly accumulate, creating a ponding condition on the road. He explained that the crown in |athe road had been distorted because the ruts would not allow water to run off the road.[1] Instead of running off the road, the water accumulated between the two ruts in the eastbound lane. Finally, Evans testified that the ruts violated the DOTD’s published standards of proper road maintenance. He admitted, however, that he did not have the means to take a measurement of the depth of water that might accumulate in the depression formed by the ruts in the area where Wynder most likely lost control of his vehicle.
Next, Billy Gorham (“Gorham”), maintenance superintendent for the Winn Parish DOTD, testified that he inspected the road in the area of milepost 83.5 on U.S. Highway 84 a few days before the accident. He testified that he was aware of the DOTD standards regarding road repair, but made no repairs because he did not notice a rutting condition in the road that required remediation under DOTD maintenance standards.
Both officers investigating the accident testified regarding the conditions of the road at milepost 83.5 on U.S. Highway 84. Deputy Stanly Martin of the Winn Parish Sheriffs Department testified that there were ruts in the road and that, on the morning of the accident, the rain filled the ruts with water, creating a ponding condition on the road. Deputy Martin testified that these ruts had existed over the previous year and that they were in the eastbound lane. He admitted, however, that he never reported to DOTD the rutting conditions he observed and he never measured these ruts. The other investigating officer, Louisiana State Trooper Steven Rachal, | testified that he observed tire grooves in the road, but not any deep ruts. Trooper Rachal further testified that he did not know why Wynder’s vehicle went out of control, but he noted that a contributing factor to the accident was the wet road surface.
A list of interrogatories was provided to the jury at the conclusion of the trial. The jury only responded to the first interrogatory, finding that the road in the area of milepost 83.5 on U.S. Highway 84 was not defective and did not create an unreasonable risk of harm to either Calvert or Wynder. In light of this finding, the jury did not answer the remaining interrogatories regarding fault, apportionment of fault and damages. On November 9, 2001, the trial judge rendered judgment in favor of DOTD, dismissing with prejudice all demands of Plaintiffs. The trial judge denied both Plaintiffs’ motions for judgment notwithstanding the verdict and, alternatively, motions for a new trial. This appeal ensued.
On appeal, Plaintiffs raise the following assignments of error:
1. The jury committed manifest error and was clearly wrong when it answered interrogatory number one in the negative and held that the road located at milepost 83.5 of U.S. Highway 84 was not defective and not the cause of the accident on September 20,1996; and
2. Because the jury answered interrogatory number one in the negative, *1123 the jury failed to consider the remaining interrogatories and, since the record is incomplete and before this court, this court should consider all the remaining issues presented by the unanswered interrogatories and decide this matter on a de novo review of the record.
DISCUSSION
A jury’s finding of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State of Louisiana, Through Department of Transportation and Development, 92-1328 (La.4/12/93), 617 So.2d 880; Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest error and clearly wrong standard demands great deference to the trier of fact’s findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear on the listener’s understanding and belief in what is said. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell, supra. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest, error or clear wrongness, even in a finding purportedly based upon credibility determination; but, where such factors are not present and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id.
The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court’s findings; it must, instead, review the record in its entirety to determine whether the jury’s finding was clearly wrong or manifestly erroneous. Stobart, supra. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.' The reviewing court must always keep in mind that, “if the | atrial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Stobart, supra, citing Housley v. Cerise, 579 So.2d 973 (La.1991)(quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990)). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
In the case sub judice, Plaintiffs urge that the jury committed manifest error and was clearly wrong when it answered the first interrogatory in the negative and held that the road in the area of milepost 83.5 on U.S. Highway 84 was not defective and did not create an unreasonable risk of harm to either Wynder or Calvert. Plaintiffs argue that the evidence presented proved that the road was defective and did create an unreasonable risk of harm. After reviewing the record in its entirety, we hold that there was a reasonable basis for the jury’s finding, and, therefore, the judgment of the trial court is neither manifestly erroneous nor clearly wrong.
The record reflects that the jury’s finding is based on reasonable evaluations of witness credibility and. reasonable inferences. In addition to listening to the testimony of all witnesses at trial, the jurors *1124 also reviewed all the exhibits introduced into evidence. Among the evidence introduced was a photograph showing the extensive damage to the vehicles, including Wynder’s vehicle, which was almost torn in half. Based on the photographs of the vehicles, the testimony of 17the investigating officers, the testimony of the DOTD maintenance supervisor and the testimony of the expert witness, the jury could have reasonably inferred that the speed of at least one of the vehicles was far in excess of a safe speed for the rainy weather conditions the morning of the accident. Consequently, the jury could reasonably conclude that there were factors which actually caused the accident, other than the condition of the road. Evans, Plaintiffs’ expert witness, testified that the combined speed of the two vehicles, at impact, was as high as 100 miles per hour, and the damage to the two vehicles could have occurred with combined impact speed as low as 80 miles per hour. Evans testified, however, that he did not know the exact point where Wynder’s vehicle began going out of control. At trial, the trial judge also noted that he had a problem with Evans’ testimony as to the “flow of the traffic of the vehicle down the hill,” since Evans produced no scientific data on this issue for the court. Moreover, there were questions raised as to Evans’ methods of measurement and the scientific basis for his conclusions. There was considerable speculation as to what may have happened in the accident and the jury had to determine if the expert witness testimony was credible.
In contrast, Gorham testified that, a few days before the accident, he examined the surface of the road and did not notice a rutting condition that was sufficient enough to require remediation under DOTD maintenance standards. In addition, a DOTD maintenance schedule, which was admitted into evidence, showed that routine maintenance in the area of the crash site was conducted on 45 separate occasions in the four years and nine months ^preceding the day of the crash. The jury chose to accept this testimony as more credible than that of Evans.
The jury also weighed the credibility of the two investigating officers. Trooper Rachal testified that he observed tire grooves in the road, but not deep ruts, while Deputy Martin testified that he observed deep ruts. Again, after hearing this testimony, the jury made a determination of which view of the evidence to accept and we will not disturb this determination on appeal.
Plaintiffs, citing Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967), argue that the testimony of a witness which stands uneon-tradicted must be accepted as true and that, because DOTD called no witnesses, the testimony of Plaintiffs’ witnesses must be accepted as true. Plaintiffs’ reasoning assumes that the testimony of their witnesses was uncontradicted. Testimony, however, can be contradicted by other evidence or proof. Merchants & Farmers Bank & Trust v. Smith, 559 So.2d 845 (La.App. 3d Cir.1990), writ denied, 563 So.2d 865 (La.1990). If the factfinder is presented with two kinds of proof, each kind tending to establish completely different facts, it is the function of the factfinder to make a determination of facts from the conflicting proofs. The jury examined both the testimony and exhibits in the instant case and determined that certain witness testimony conflicted with other testimony and exhibits. The jury simply concluded that some evidence was not credible and made its findings accordingly.
The jury, after hearing all the testimony and reviewing all the exhibits, determined the credibility of the witnesses and made a reasonable inference that the road in the *1125 area of milepost 83.5 on U.S. Highway 84 was [3not defective and did not create an unreasonable risk of harm to Wynder and Calvert. As previously stated, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra. The jury had a choice of two permissible views as to the cause of the accident in the instant case and it found certain evidence to be more credible than other evidence. The jury’s finding in the case sub judice is reasonable in light of the record reviewed in its entirety. The jury was not manifestly erroneous or clearly wrong in its finding; and, therefore, we hold that Plaintiffs’ first assignment of error is without merit. Since we find that Plaintiffs’ first assignment of error is without merit, we preter-mit discussion of the second assignment of error.
CONCLUSION
For the foregoing reasons, the judgment on jury verdict against Plaintiffs, Tammy Jo Calvert Boren, Wanda Wynder and Chelsea Jene Wynder, is affirmed. Costs of this appeal are assessed to Plaintiffs, Tammy Jo Calvert Boren, Wanda Wynder and Chelsea Jene Wynder.
AFFIRMED.

. The crown is built into the middle of the road to give the road a slight slope, causing water to run off the road.